# Louisville & Nashville R. R. Co. *v.* Rayburn.

*Injury to Person on Track.*

(Decided April 22, 1915.    68 South. 356.)

1. *Railroads; Persons on Track; Injury; Burden of Proof.*—Where the action was against a railroad company for the death of a trespasser on its track, struck by a train, proof that deceased was killed by the train did not cast the burden upon the railroad of proving want of negligence under section 5476, Code 1907, since the only negligence for which the company was liable would be want of care after a discovery of the position of peril of the deceased.

2. *Same.*—The evidence examined and held insufficient to require a submission to the jury of the question whether the defendant was negligent, and hence, to entitle defendant to the affirmative charge.

3. *Same; Trespassers; Lookout.*—The law requires a railroad company to keep a lookout for ordinary domestic animals straying upon its track, but not for intelligent human beings who are trespasers thereon, as they are presumed to know the danger and to keep a lookout for passing trains, the duty imposed being not to injure them wantonly after the discovery of their peril.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by Frank Rayburn against the Lousville & Nashville Railroad Company for damages for the death of his intestate while on the track of the defendant company. Judgment for plaintiff and defendant appeals. Reversed and remanded.

Transferred from the Court of Appeals under the act creating said court.

EYSTER & EYSTER, for appellant.

JOHN R. SAMPLE, TENNIS TIDWELL, W. J. BOYKIN, and J. M. MILLER, for appellee.

MAYFIELD, J.—The action is under the homicide statute. Plaintiff's intestate was killed by a southbound passenger train, at about 4 o'clock in the afternoon of December 14, 1911. He was on or near the defendant's railroad track and near some swamp, and there appears to have been considerable fog at the time and the place of the injury. The accident occurred near Flint's station, a few miles south of Decatur, but not at any one of the places mentioned in the statute (section 5473 of the Code of 1907). The speed of the train, on the occasion in question, was estimated to be from 20 to 45 miles per hour. On the undisputed evidence intestate was a trespasser at the time of the injury. Three counts of the complaint, 1, 2, and 3, charged subsequent negligence; and one count, 4, charged wantonness or willful injury. There was absolutely no evidence tending to prove this last count, No. 4. The only evidence tending to prove subsequent negligence was that to the effect that intestate was seen by other persons than the train crew, and that the track was straight. This alone, of course, was not sufficient, under our repeated rulings. It must be shown that those in charge of the train actually saw the person on, or dangerously near, the track. The engineer testifies that he did see the deceased before the engine struck him, but not in time to prevent the collision. He says that he saw an object on or near the track, when within 200 feet of it, but that he did not perceive it to be a person until he was within 100 feet; that he immediately did all within his power, or that of a skillful en-

[Louisville & Nashville R. R. Co. v. Rayburn.]

gineer, to stop the train, but without avail. The deceased was either prone on or near the track, or was on his knees; he was not on his feet, and was not moving. There was therefore no evidence that deceased could or would have gotten out of the way of the engine, even if the train had been slowed up sooner, as has been held in other cases. All the evidence shows that the train could not have been stopped after the discovery of the peril, and that it was stopped as soon as practicable. This being true, there was no actionable negligence, and there could be no recovery, in this action, no matter where the burden of proof is placed.

(1) There was no evidence or circumstance to show that the train crew, or any other witnesses, testified falsely; and, as we have said, there is nothing in this record to indicate that they did so falsely testify.

The trial court evidently proceeded upon the theory that the case was brought within the provisions of section 5476 of the Code, and that plaintiff made out his case when he proved that his intestate was killed by an engine or locomotive of the defendant. In this, the trial court was in error, as we have pointed out in recent cases.—*L. & N. R. R. Co. v. Jones,* 191 Ala. 484, 67 South. 691, and *L. & N. R. R. Co. v. Moran, Adm'r,* 190 Ala. 108, 66 South. 799. The recent cases on this subject were reviewed in these two cases; and it was decided, after mature consideration, that the statute in question does not have the effect to cast the burden of proof upon a railroad company to acquit itself of negligence, where a trespasser on its tracks is stricken by a passing train. It is pointed out that in such cases the only actionable negligence alleged is negligence of the defendant railroad company after the discovery of the peril. The complaint in such cases, of course, admits, if it does not expressly allege, that the injured

person was negligent, but alleges that the defendant was guilty of subsequent negligence after the discovery of plaintiff's peril. Both parties being negligent, the statute raises no presumption that the defendant's negligence was subsequent to that of the plaintiff or the person injured. The material allegation in such cases is that the plaintiff's negligence was prior in point of time to that of the defendant, and was not therefore the proximate cause of the injury. This allegation, being material, and the only basis for the statement of a cause of action, must, of course, be proven; and the statute does not aid the plaintiff in such cases, and was never intended to apply to such. The burden of proof is therefore on the plaintiff, and he must meet it; otherwise he is not entitled to recover. It therefore follows that the trial court erred in charging the jury that the burden of proof was on the defendant to acquit itself of negligence, and in refusing the charges requested by the defendant, to the effect that the burden was on the plaintiff to prove that the agents or servants of the defendant were guilty of negligence which proximately contributed to the injury alleged. It should be said, however, that this case was tried in the lower court before the decision in the cases of Jones and Moran, supra.

(2) Under all the evidence in this case the defendant was clearly entitled to the affirmative charge in its favor. The undisputed evidence showed that it was impossible to prevent the injury after the peril of intestate was discovered. There is no evidence tending to show that his peril was ever discovered by any one who could or should have prevented the injury, except the engineer, and no evidence nor circumstance tending to show that he discovered intestate sooner than he claimed in his testimony to have done, and no evi-

dence nor circumstance showing that the accident could have been prevented after he did discover the peril. The testimony of the engineer was in part as follows, and there was no testimony to the contrary: "I worked for the Louisville & Nashville Railroad Company as engineer, and have been working for the Louisville & Nashville Railroad Company for 31 years, and in December, 1911, was engineer of the accommodation train running between Decatur and Birmingham, and was engineer of the train which is said to have struck Van B. Rayburn. I was running at a rate of speed, will say of 40 or 45 miles an hour, and when I ran through this fog that settled over this track from these ponds, I saw an object on the track, and could not tell what it was, when I first saw it. The man was humped down on his knees, and he looked like a wad of something. The first thing that popped into my mind was that it was something that had been knocked off from the north-bound track. There is a double track along there. As soon as I saw it, I shut off steam and put on brakes, blowed the whistle, opened the sand lever, and brought my train to a stop as quickly as I possibly could. I ran by the man some distance, then backed up and put him on the baggage car and carried him to Hartselle. I was in 100 feet of this object when I discovered it was a man. When I first discovered the object, I was about 200 feet from it. As soon as I discovered it was a man, I brought my train to a stop as soon as I possibly could. Going at the rate of speed that I was, it was physically impossible for me to have brought that train to a stop before striking the man. By using all the appliances, no brakes on earth could have stopped that train in 200 feet running at 40 or 45 miles an hour. In addition to looking out along the rail in front of the engine, I had to operate my engine. It requires

very little of my attention on the inside of the cab in operating the engine. On the inside of the cab I have to see that I have proper stopping powers; that my air pressure is right. Have got to see that my water is right; see that my lubricator is working all right, and see to the speed of my train—all these things have to be looked after, and it is the engineer's duty to look after these things. The brakes on this engine were first-class, and as good as an engine could be equipped with. They were in good working order, and the train was in good working order and handled properly. When I applied my air and gave the alarm, I was about 200 feet from the object; that was a soon as I saw the object. When I first saw the object, I applied my brakes, shut off the steam, and about that time, I discovered the object to be a human being, but could only tell it by seeing the clothes. I went into emergency. I mean by saying that I went into emergency that I got all the braking power the engine had. We had about 70 pounds of braking power, and when we went into emergency, we had about 20 more pounds of braking pressure. As soon as I saw this object was a man, I put on the emergency brakes, and gave short blasts of the whistle, the regular alarm signal. After the engine struck this man, I ran about 600 or 700 feet past there. The weather conditions that afternoon was a cloudy evening, and there was a dense fog along that track through that swamp, a distance of about one-half a mile. The fog lay north of where the man was. The man was just in the fog light beyond the pond, and at the far edge of the fog zone."

There was no evidence which tended to contradict this testimony, except other evidence as to the speed of the train, and none to show that the train could have been stopped in time even if the train had been going

at the lower rate of speed estimated by any of the witnesses. The railroad company, in this case, would not be liable, even if the intestate had been deaf, dumb and blind.

(3) The law imposes on railroad companies the duty of keeping a lookout for ordinary domestic animals straying on their tracks, but not for intelligent human beings who are trespassers thereon. Such beings are presumed to know of the danger and to keep a lookout for passing trains or engines; yet notwithstanding this higher duty as to such animals, the railroad company would not be liable in this case if it had killed a horse instead of an intelligent being, who was a trespasser and was himself guilty of negligence. In speaking of the liability of railroad companies in such cases, Stone, C. J., said, in *Hembree's Case,* 85 Ala. 485, 5 South. 175: "On the other hand, if the officer in control of the train is skilled in his profession, is watchful, and a dumb animal comes on the track in front of, and in such proximity to, the train as that the latter cannot be stopped in time to save the animal, then the engineer need do nothing; for he need not attempt the impossible. In such case, the railroad company is not liable, unless with proper watchfulness, considered in connection with his other duties, the engineer could have discovered the approaching animal in time to frighten it away with the cattle alarm, or stop or check the train so as to prevent the collision. It is not every injury a train may inflict that fastens a liability on the railroad company. If a law were so to declare, it would be unconstitutional.—*Zeigler v. S. & N. R. R. Co.,* 58 Ala. 594. And juries, under their oaths, cannot establish a rule for their government, and act on it, which, if declared by the Legislature, would be adjudged unconstitutional. The true and only rule, sanctioned

alike by law and by conscience, is to hold the railroad company liable, whenever the injury is the result of negligence, or want of skill in its officials, under the rules laid down above. This is right in itself, and stands on the same footing as any injury suffered through the unskillfulness or negligence of another, save in the single matter of the burden of proof. But when the injury is not the result of negligence or unskillfulness, but, under the rules above, is unavoidable, then the railroad company is not liable; and to hold it so is a gross impropriety and a great wrong.—*Ala. Gr. So. R. R. Co. v. McAlpine*, 75 Ala. 113."

This case has been repeatedly followed, and the same rule often applied, where a person is killed or injured by passing trains or engines.

If the evidence in this case is true, no human agency could have prevented killing intestate after his peril was discovered. It follows that the general affirmative charge should have been given for the defendant.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.