## Louisville & Nashville Railroad Co. v. Rayburn.

### Death Action.

(Decided November 16, 1916.   Rehearing denied December 30, 1916.
73 South. 461.)

1. **Railroads; Injury on Track; Evidence.**—Under the evidence in this case it was a question for the jury as to the particular posture and situation on the track of the deceased when killed.

2. **Same; Discovery.**—Under the evidence in this case it was a question for the jury as to the distance from which the engineer, looking ahead on the track, saw the deceased in a dangerous place, and the distance the train was away when the engineer discovered that the object on the track was a human being.

3. **Evidence; Expert; Credibility.**—The credibility of an expert witness is for the jury.

4. **Same; Basis of Fact.**—Where there was evidence tending to disclose every hypothesized fact recited in the inquiry it was not error to permit a question to an expert witness as to the distances in which a certain train going at various speeds could be stopped; the objection being based on the grounds that the question was not based on facts disclosed by the evidence.

5. **Same; Non-Expert; Speed of Train.**—A non-expert witness who has observed the speed of trains may give his opinion as to the rate of speed at which a train was going, and the fact that he was in direct line of the approaching train would not affect the admissibility of his opinion, even if it might be said to affect its credibility.

6. **Railroads; Accident on Track; Speed; Jury Question.**—Under the evidence in this case it was for the jury to determine the speed at which the train was going that killed deceased, the evidence showing various speeds, from 20-45 miles an hour.

7. **Evidence; Expert; The Distance Required to Stop.**—Where it appeared that the word "ought" was used in the sense of "could" the testimony of expert engineer that a train running 25 miles an hour as it approached deceased on the track ought to be stopped by using all means of emergency in from 90 to 110 feet was admissible.

8. **Railroads; Track Accident; Discovered Peril; Avoidance.**—If from the evidence the jury concluded that the engineer of the defendant saw deceased when he was more than 100 feet away and recognized that the object was a human being, then the question whether he should and could have

averted the injury by the skillful use of all the appliances at hand was a question for the jury.

9. **Evidence; Examination; Expert.**—In cross examining an expert loco-motive engineer, the question relating to the time required to stop trains running at various speeds, the question being "your education about time has been neglected?" was by the way and properly disallowed.

10. **Same.**—Where the witness' ignorance of such matter had already been stated on cross examination it was proper to exclude a question to him as to whether he had any idea how long a time it would take to stop an engine running twenty miles an hour.

11. **Railroads; Track Accident; Instructions.**—Where the action was for the death of a trespasser killed on the defendant's track, instructions that if the engineer of the defendant saw the deceased on the track in time to stop the train and avoid the injury, and failed to do so, and such negligence was a proximate cause of the death of the deceased, then the verdict should be for the plaintiff, was properly given.

12. **Trial; Instructions; Affirmative; Rule.**—Where the request for the affirmative charge is predicated upon a variance, the refusal of such charge is not error under rule 34, Circuit Court Practice, unless the record shows that the variance was brought to the attention of the court by proper objection to evidence.

13. **Railroads; Persons on the Track; Care; Presumption.**—While a prudent, competent engineer may ordinarily assume that a grown person in an exposed situation on or near the track ahead of an approaching engine will conserve his own safety, if aware of, or warned of his danger, yet such presumption cannot be indulged in as to one discovered prone on the track, since his position would seem to suggest the probability that he would or could not conserve his safety, or remove to a place without the sweep of the train.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by Frank Rayburn against the Louisville & Nashville Railroad Company for damages for the death of his intestate. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Affirmed.

Assignments of error referred to in the opinion covering special instructions given at plaintiff's request are as follows:

(61) Although Van Rayburn was a trespasser on defendant's track, yet, if the agent or employees of defendant in charge of the train saw him on the track in time to stop the train and avoid hitting him and failed to do so, then your verdict should be for plaintiff.

(62) If you are reasonably satisfied that the engineer of defendant saw plaintiff's intestate in front of his train in a perilous position in time to stop said train before striking said intestate, and said engineer negligently failed to stop said train,

and that intestate's death was a proximate cause of such negligence, then your verdict should be for plaintiff.

(63) Although the engineer owed intestate no duty to discover him prone on the track, yet if the engineer did, in fact, discover him prone upon the track in time to stop the train before striking him, and he negligently failed to stop the train, and because of such negligence said intestate was killed, then your verdict should be for plaintiff.

Defendant's special charge 39 was as follows and was refused:

I charge you that, even though the engineer saw deceased on the track or near the track, he had the right to assume that deceased could get to a place of safety, and he [engineer] had the right to indulge this assumption until such a time as deceased, by his action or failure to act, made him believe that deceased was unaware of the approaching train, and if at the time the engineer became conscious of the perilous position of deceased he then exercised all preventive means known to skillful engineers to stop his engine, but was unable to do so before colliding with intestate, your verdict should be for the railroad.

EYSTER & EYSTER, for appellant.   W. J. BOYKIN and TIDWELL & SAMPLE, for appellee.

McCLELLAN, J.—This is the second appeal in this cause.— 192 Ala. 494, 68 South. 356.   The issues submitted to the jury on the last trial were those resulting from the averments of counts 1, 2, and 3, all of which ascribed intestate's death to simple negligence on the part of employees of the defendant, appellant, after his perilous situation became known to the operatives of the train.   On the former appeal the reversal was based upon the entire absence of evidence to support the allegations ascribing intestate's death to willful or wanton wrong or to simple negligence after intestate's peril was known to the defendant's employees operating the train.   Upon the record now before this court must the review be had.

(1) Undoubtedly the intestate, then a trespasser upon the track of the defendant (*L. & N. R. R. Co. v. Rayburn*, 192 Ala. 494, 68 South. 356), was killed by a train operated by servants of the defendant.   Just before and at the time of his injury he was either asleep or stupefied with intoxicants, and his body

was in a somewhat crouching posture on the end of the ties next to the west rail, the witness Strickland testifying that from his viewpoint a mile or more away down the track the object (which he observed, but could not then distinguish) was "on the end of the tie and on the west rail." There was other evidence to the effect that Rayburn's body was not on or over the west rail. What his particular posture and situation really were was a question for the jury. It does not appear that he moved at any time.

(2) The chief issues on the trial were:　At what distance from Rayburn the engineer, who was looking ahead along the track, first discovered the object on the track; at what distance from Rayburn the engineer first discovered that the object was a human being, at which moment the duty first arose to warn the man, if the emergency permitted that effort, and to avert the negligent injury of the thus imperiled man; and whether the engineer, after becoming aware that a human being was imperiled, promptly and in proper order observed the diligence and care a skillful man in his situation should have employed to avert injury.

It is insisted for appellant that the general affirmative charge was its due, not only on some, but on all, of these issues, the burden to sustain which, at least prima facie, was on the plaintiff. The whole evidence bearing on the affirmative of these issues has been carefully considered. Our opinion is that to have given the affirmative charge for the defendant would have invaded the jury's province, would have resulted in withdrawing from the jury the consideration of evidence directly tending to sustain, to discharge, the burden of proof assumed by the plaintiff. While the defendant offered much testimony tending to the effect that the afternoon in question was cloudy, that it was drizzling rain, that at the point of the injury a fog, coming up from two ponds beside the track, hung so as to obscure, if not obstruct, the view of the engineer as his train moved from the north toward the point at which Rayburn was almost recumbent on or next to the west rail, yet there was testimony, by the witness Strickland, that was in direct conflict therewith. If the afternoon was not rainy, cloudy, and foggy, of course, it was for the jury to decide at what distance from Rayburn the engineer, who was looking ahead, saw Rayburn in a dangerous place on the track and at what distance he in fact was when he discovered that the object

was a human being. The phase of the issue indicated could, under the evidence, only be determined by the jury.

(3, 4) The plaintiff introduced H. H. Parker as an expert locomotive engineer. We do not find in the record any objection to this witness' competency to testify as an expert. On redirect examination he testified that he had had "about five or six months' experience on passenger engines;" in conflict, it is true, with his previous testimony that he had had no experience as a passenger engineer, but the conflict thus instituted was a matter for the jury's decision. He testified that on a clear day an object on a straight track ahead should be seen at least 500 feet by an ordinary person on an engine approaching it, and that he "ought to distinguish what an object is within 400 feet of him." Whatever may have been said in criticism of the credibility of such testimony was matter that must have been addressed to the jury's judgment. There was no possible error in overruling these objections to the questions calling for testimony from the witness Parker, irrelevant, immaterial, leading, and calling for the conclusion of the witness. This witness was asked to state his opinion as to the respective distances in which an engine and train of the character in question, going at the various speeds referred to in the evidence, could be brought to a stop. The objection was that the inquiry was not based on the facts disclosed by the evidence. There was evidence tending to disclose every hypothesized fact recited in the inquiry, though there was testimony in contradiction of, for instance, the hypothesized fact that the track was level.

(5, 6) The witness Strickland testified that this train was running 20 to 30 miles an hour after it left Cedar Lake and when it was approaching the place where Rayburn was hit. He was upwards of a mile down the track from the train. It is insisted that this statement of the witness should be disregarded because of its inherent unreliability. A nonexpert witness who has observed the speed of trains may give his opinion of the rate of speed a train is running.—A. G. S. R. R. Co. v. Hall, 105 Ala. 599, 17 South. 176; 5 Ency. of Ev. pp. 108, 709. The fact that the witness was in direct line of the approach of the train may—doubtless does—have bearing upon the credibility to be accorded such testimony; but manifestly it does not affect the admissibility of the witness' opinion as to the speed of the train's movement. It was for the jury to determine whether this train

was running 20 miles an hour or as much as 45 miles an hour on the occasion in question.

(7) If this train was found by the jury to have been running 20 miles an hour as it approached Rayburn, there was testimony by the witness Parker, the admission of which was not error, that it "ought to be stopped by using all means of emergency in 90 or 110 feet." The witness might have employed a better means of expression of what he doubtless intended to say than when he used the word "ought." However, from his cross-examination it appears with all certainty that what he intended to say was that a train running 20 miles an hour could be stopped between 90 and 110 feet.

(8) If the jury concluded that the engineer in fact saw Rayburn when he was more than 100 feet away and recognized the fact that the object was a human being, the issue was one of fact whether he should and could have averted the injury by the skillful use of the appliances at hand.

(9) On the cross-examination of the witness Parker the plaintiff's objection to two questions relating to the time required to effect the stopping of trains running at various speeds were sustained. The first was this: "Your education about time has been neglected?" Obviously this question was by the way. No error was committed in disallowing it.

(10) The other question inquired whether the witness had any idea how long a time it would take to stop an engine running 20 miles an hour. The witness' ignorance of the matter sought by the question had been already stated on the cross-examination.

(11, 12) No error affected the giving, at plaintiff's instance, of the special instructions on which assignments 61, 62, and 63 are based. Under the evidence to which they must be referred their correctness is so manifest as not to be debatable. The imperiled situation of Rayburn on the track before the oncoming train and the engineer's knowledge thereof were clearly hypothesized in these instructions. The suggestion, predicated of the fact that the complaint ascribed the negligence to agents or servants in charge of the train, which, appellant insists, referred to the conductor (who was not shown to be negligent in the premises) as the master manager of the train, that the charge was not at all sustained by the evidence, cannot be accepted. The point is too fine. Besides, the request for the affirmative

charge did not advise the court, as rule 34 of circuit court practice requires (175 Ala. xxi) that a variance on this account was a ground on which the general affirmative instruction was requested for the defendant.

(13) The court was not in error in refusing defendant's special charge 39. While a prudent, competent engineer may ordinarily presume that an adult in an exposed situation on or near the track ahead of his engine will conserve his own safety if he is aware or warned of his danger (*Anniston Elec. Co. v. Rosen,* 159 Ala. 195, 203, 48 South. 798, 133 Am. St. Rep. 32), the presumption is not to be indulged when the party exposed is discovered prone, as was Rayburn, on the track. The posture of one so situated should seem immediately to suggest to a competent engineer the probability that one thus recumbent will not or cannot remove to a place of safety.—*Cent. Ga. Ry. Co. v. Blackmon,* 169 Ala. 304, 53 South. 805. The charge proceeded on the same theory it might have invoked if Rayburn had been on his feet on the track..

All the assignments of error insisted upon in the brief for appellant have been considered. They are without merit.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.