(98 South. 192)

## SOUTHERN RY. CO. v. GANTT.
### (8 Div. 533.)

(Supreme Court of Alabama. Nov. 8, 1923. Rehearing Denied Dec. 6, 1923.)

**1. Pleading ⬅️46—Entire complaint looked to to see in what capacity plaintiff sues.**

Entire complaint is looked to in ascertaining whether administrator sues in his individual or representative character for the death of his intestate, under Code 1907, § 2486.

**2. Death ⬅️46—Demurrer to complaint for failure to show capacity in which plaintiff sued overruled.**

In action for death under Code 1907, § 2486, where caption of complaint styled plaintiff as "T. G., Administrator of the Estate of J. L., Deceased," and the body of each count claimed damages resulting from the death of "plaintiff's intestate," a demurrer to the complaint on the ground that it did not appear whether plaintiff sued in his individual or representative character was properly overruled; the fact that the cause of action could accrue to plaintiff only in his representative capacity being a determining factor.

**3. Railroads ⬅️394(6)—General averment of negligence or wantonness sufficient, where duty of care shown.**

Where averments showing discovery of intestate in a place of peril on or near the track disclosed condition from which arose the duty to conserve his safety, a general averment of negligence or wantonness was sufficient, under Code 1907, § 2486.

**4. Railroads ⬅️390—Discovered peril doctrine stated.**

Original negligence of one in being a trespasser on a railroad track from which a present danger may arise at any moment does not imply negligence after the discovery of his impending peril and concurrent with the negligence of the trainmen after they have discovered his peril, and such subsequent, concurring, contributory negligence is defensive.

**5. Railroads ⬅️394(6)—Count held to charge wantonness in allowing train to run upon person on track.**

In action for death on railroad track, under Code 1907, § 2486, a count alleging wantonness was not defective in charging that the trainmen wantonly "caused or allowed" the train to run upon the deceased, as wantonness may arise from conscious omission of duty in the presence of imminent danger.

**6. Jury ⬅️97(1)—Strikers from one railroad proper jurors in action against another.**

Former employees of one railroad, out on general shopmen's strike, were competent jurors in a personal injury action against another railroad; nothing appearing beyond the above fact to show a disqualifying bias or interest.

**7. Witnesses ⬅️240(5)—Questions held not objectionable as leading.**

Where defendant's engineer in charge of train killing plaintiff's intestate testified, "I know the best method of stopping an engine," and "I immediately shut off the steam and applied the emergency brake and sounded the alarm whistle and applied sand," questions, "Did you do all that could be done by a skillful engineer when you saw him?" and "Did you do all the things that are known to a skillful engineer to stop that engine?" were not objectionable as leading.

**8. Evidence ⬅️514(3)—Question to engineer of train killing deceased held admissible.**

Where defendant's engineer in charge of train killing plaintiff's intestate, testified, "I know how to run an engine and how to stop one" and "I know the best method of stopping an engine," and "I immediately shut off the steam and applied the emergency brake and sounded the alarm whistle and applied sand," the court erred in not permitting him to answer the questions, "Did you do all that could be done by a skillful engineer when you saw him?" and "Did you do all the things that are known to a skillful engineer to stop that engine?" the witness being an expert.

**9. Appeal and error ⬅️1058(2)—Exclusion of evidence cured by subsequent admission.**

Error in not permitting engineer to answer question as to whether he did all things that are known to a skillful engineer to stop his engine was cured by his subsequent testimony as to what he did, stating in conclusion, "That is all that is known to a railroad man to do."

**10. Evidence ⬅️588—Jury may reject part of evidence of witness and accept part.**

Jury may believe part of the evidence of a witness and reject part.

**11. Railroads ⬅️400(15)—Wantonness held for jury.**

In an action for death of intoxicated person on railroad track, under the humanitarian doctrine, the question of wantonness held for the jury.

**12. Railroads ⬅️400(14)—Negligence under humanitarian doctrine for jury.**

In an action for death of intoxicated person on track under the humanitarian doctrine, whether trainmen were negligent held for the jury.

**13. Appeal and error ⬅️843(2)—Evidence in support of wantonness not considered, where issue of simple negligence also for jury.**

The Supreme Court, in considering the motion for a new trial, need not decide whether evidence in support of wantonness was such as would sanction a verdict for plaintiff thereon, where the issue of simple negligence after discovery of peril was also before the jury; the verdict having been sustained by the trial judge.

**14. Railroads ⬅️398(5)—Wantonness should never be lightly inferred.**

That conscious disregard of known duty in the face of imminent danger to human life, which is called wanton conduct, should never be lightly inferred by the jury.

**15. Trial ⬅️253(9)—Instruction held erroneous as ignoring feature of evidence.**

Court properly refused, as ignoring feature of evidence tending to show negligent failure

to give an alarm after discovery of peril, to instruct, "If you believe that intestate was a trespasser and that the servants in charge of train failed to discover intestate's perilous position until it was too late by the exercise of all preventive means known to skillful operators of trains to check and stop said engine before striking the intestate, then your verdict should be for the railroad."

**16. Trial ⬦═⇒253(9)—Instruction as to assumptions permissible to trainmen properly refused as ignoring condition of person killed on track.**

An instruction that if servant in charge of train saw deceased on track he had right to assume that he could get to a place of safety, etc., *held* erroneous, as ignoring evidence tending to show that when discovered on the track the deceased was in a drunken, staggering condition, and that the engineer at once saw he was in danger.

**17. Trial ⬦═⇒219—Instruction as to positive and negative testimony erroneous without definition.**

An instruction, "I charge you that positive evidence of the happening of an event, such as the blowing of a whistle, is entitled to more weight than negative evidence about such occurrence," was erroneously given, in the absence of some definition of positive and negative testimony.

**18. Trial ⬦═⇒329—Finding must be based on whole evidence.**

A finding upon a material fact must be based on the whole evidence.

On Rehearing.

**19. Railroads ⬦═⇒394(6)—Count for wanton injury need not aver discovery of peril.**

In an action for death · on track, under Code 1907, § 2486, a count based on wanton injury need not aver a discovery of intestate's peril in time to avoid injury.

Appeal from Circuit Court, Morgan County; Robert C. Brickell, Judge.

Action for damages by Thomas Gantt, as administrator of the estate of Jesse Long, deceased, against the Southern Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Charges 52, 57, and 58, refused to defendant, are as follows:

"52. If you believe that intestate was a trespasser, and that the servants in charge of train failed to discover intestate's perilous position until it was too late by the exercise of all preventive means known to skillful operators of trains to check and stop said engine before striking intestate, then your verdict should be for the railroad.

"57. I charge you that, even though the defendant's servant in charge of train saw deceased on track, he had the right to assume that deceased could get to a place of safety, and such servant had the right to indulge this assumption until such time as deceased, by his action or failure to act, made him believe that the deceased was unaware of the approaching train, and if, at the time such servant became conscious of deceased's perilous position, he then exercised all preventive means known to skillful operators of trains to stop the engine, but was unable to do so before colliding with intestate, your verdict should be for the railroad.

"58. I charge you that positive evidence of the happening of an event such as the blowing of a whistle is entitled to more weight ·than negative evidence about such occurrence."

S. A. Lynne, of Decatur, for appellant.

When negligence is concurrent, and operative at the time of the injury, and contributes to it, there can be no recovery. Consumer's Brew. Co. v. Doyle's Adm'x, 102 Va. 399, 46 S. E. 391; Green v. Los Angeles Terminal Co., 143 Cal. 31, 76 Pac. 719, 101 Am. St. Rep. 68; Butler v. Rock Island, 99 Me. 149, 58 Atl. 775, 105 Am. St. Rep. 267; Smith v. Norfolk & Southern R. Co., 114 N. C. 728, 19 S. E. 863, 923, 25 L. R. A. 287. The averment that defendant's servants wantonly and wrongfully caused or allowed the train to injure intestate falls short of the requirements for a wanton count. L. & N. v. Anchors, 114 Ala. 492, 22 South. 279, 62 Am. St. Rep. 116. It is not sufficient that the caption of the complaint shows the capacity in which plaintiff sues. Bryant v. So. Ry., 137 Ala. 491, 34 South. 562; Alverson v. Little Cahaba Co., 201 Ala. 126, 77 South. 547; Ferrell v. Ross, 200 Ala. 90, 75 South. 466. Defendant's evidence showed the giving of warning signals, and the motion for new trial should have been granted. Fayet v. St. L. & S. F., 203 Ala. 3, 81 South. 671; A. G. S. v. Smith, 196 Ala. 77, 71 South. 455. It was error to refuse defendant the right to challenge for cause jurors who were striking employés of another railroad corporation. 24 Cyc. 282. It was error to refuse to allow defendant's engineer to testify that he did all a skillful engineer could do to stop the train. A. G. S. v. Linn, 103 Ala. 134, 15 South. 508; B. R., L. & P. Co. v. Hayes, 153 Ala. 188, 44 South. 1032; B. R., L. & P. Co. v. Barrett, 179 Ala. 290, 60 South. 262; Choate v. So. Ry., 119 Ala. 611, 24 South. 373. Charges 52, 57, and 58 were correct, and should have been given. C. of G. v. Blackmon, 169 Ala. 304, 53 South. 805; 9 Cyc. 867.

Harsh, Harsh & Harsh, of Birmingham, for appellee.

In actions for negligence or wrongful misconduct, it is only necessary to state facts from which the duty of defendant to act springs, and this to be followed by a conclusion of a negligent breach of that duty. Leach v. Bush, 57 Ala. 145; Bear Creek Mill Co. v. Parker, 134 Ala. 293, 32 South. 700; L. & N. v. Marbury Lbr. Co., 125 Ala. 237, 28 South. 438, 50 L. R. A. 620; Barfield v.

Evans, 187 Ala. 579, 65 South. 928; Norwood Transportation Co. v. Crossett, 207 Ala. 224.[1] The fact that a man in charge of a railroad sees a human being upon the tracks in danger of being run upon is sufficient in and of itself to create a duty upon that person to act. Snider v. A. G. S. R. Co., ante, p. 119, 97 South. 210; A. G. S. v. McWhorter, 156 Ala. 269, 47 South. 84; A. G. S. v. Sanders, 203 Ala. 57, 82 South. 17; So. Exp. Co. v. Roseman, 206 Ala. 686, 91 South. 612; Barbour v. Shebor, 177 Ala. 304, 58 South. 277; Railway Co. v. Carpenter, 194 Ala. 141, 69 South. 627. It is not necessary that the complaint aver in terms that the plaintiff sues in his capacity as administrator. If this fact appears from the whole body of the complaint, it is sufficient. A. C. G. & A. Ry. Co. v. Heald, 178 Ala. 638, 59 South. 461. A general interest in a subject or a mere possibility of a personal prejudice, apart from a pecuniary interest or a personal relationship, does not disqualify a juror, and no presumption will be indulged against the fairness of a juror who has been impaneled and sworn. Code 1907, §§ 727, 4635; Danzey v. State, 126 Ala. 19, 28 South. 697; Howard v. State, 9 Ala. App. 74, 63 South. 753; Davis v. Hunter, 7 Ala. 137; Stover v. State, 204 Ala. 312, 85 South. 393; Ward v. Meadows, 205 Ala. 432, 88 South. 427; Walker v. State, 146 Ala. 45, 41 South. 878; Strickland v. State, 151 Ala. 31, 44 South. 90. On appeal, the action of the trial court, refusing to grant a motion for new trial, will not be reversed, unless it appears the verdict was the result of passion or prejudice. Cobb v. Malone, 92 Ala. 630, 9 South. 738; B. of L. F. & E. v. Miller, 193 Ala. 78, 69 South. 10; Fidelity-Phœnix Fire Ins. Co. v. Ray, 196 Ala. 428, 72 South. 98; Ala. Pkg. Co. v. Smith, 203 Ala. 681, 85 South. 19.

BOULDIN, J. This is an action for wrongful act, omission, or negligence causing death. Code 1907, § 2486.

In the caption of the complaint, plaintiff is styled: "Thomas Gantt, Administrator of the Estate of Jesse Long, Deceased." The body of each count claims damages resulting from the death of "plaintiff's intestate."

[1] The entire complaint is looked to in ascertaining whether the plaintiff sues in his individual or representative character.

[2] The cause of action here can accrue to plaintiff only in his representative capacity. This, under our decisions, is a determining factor. The demurrer to the complaint on this ground was properly overruled. A. C. G. & A. Ry. Co. v. Heald, 178 Ala. 637, 59 South. 461; L. & N. R. R. Co. v. Trammell, 93 Ala. 350, 9 South. 870; Alverson v. Little Cahaba Coal Co., 201 Ala. 123, 77 South. 547.

The first count of the complaint, after showing the plaintiff's intestate was in a position of peril, avers that defendant's servant—

"discovered said peril and after said discovery of said peril negligently * * * caused or allowed said train to run upon or against said intestate and cause his death."

The second count is in substantially the same form, substituting "wantonly" for "negligently."

[3] The averments showing the discovery of intestate in a place of peril on or near the track disclosed a condition from which arose the duty to conserve his safety. To negligently or wantonly run the locomotive over him in such case is to disregard that duty. The duty of care being shown, a general averment of negligence or wantonness is sufficient. Southern Railway Co. v. Stewart, 153 Ala. 133, 45 South. 51; L. & N. R. R. Co. v. Marbury Lumber Co., 125 Ala. 237, 28 South. 438, 50 L. R. A. 620; Central of Ga. Ry. Co. v. Foshee, 125 Ala. 199, 27 South. 1006; Norwood Transportation Co. v. Crossett, 207 Ala. 224, 92 South. 461.

As to count 1, the point is further raised that the averments showing the intestate to be a trespasser on the track, and not showing him to be unaware of his impending danger, must be taken to concede concurring negligence on his part at the moment of his fatal injury.

[4] The rule is here well established that original negligence in being a trespasser on the track, from which a present danger may arise at any moment, does not imply negligence after the discovery of his impending peril and concurrently with the negligence of the trainmen after they have discovered his peril. Such subsequent, concurring, contributory negligence is defensive. Southern Railway Co. v. Stewart, 153 Ala. 133, 45 South. 51; L. & N. R. R. Co. v. Brown, 121 Ala. 221, 25 South. 609; A. G. S. R. R. Co. v. McWhorter, 156 Ala. 269, 47 South. 84; A. G. S. R. R. Co. v. Sanders, 203 Ala. 57, 82 South. 17; Snider v. A. G. S. R. Co., ante, p. 119, 97 South. 210.

[5] It is further insisted that the wanton count is defective in charging that the trainmen wantonly "caused or allowed" the train to run upon the deceased. The point seems to be that the alternative word "allowed" negatives the idea of wantonness. It is clear that wantonness may arise from conscious omission of duty in the presence of imminent danger. Dealing with the case of a moving train bearing down upon a human being, such nonaction is not inaptly expressed by the phrase "wantonly allowed," etc. Code 1907, § 2486; Memphis & Charleston Railway Co. v. Martin, 131 Ala. 269, 30 South. 827.

The demurrers to counts 1 and 2 of the complaint were properly overruled.

[6] On the trial, defendant moved to challenge for cause three jurors appearing on the jury list from which the trial jury was selected. The motion was based on the admitted fact that the jurors were former employees of the Louisville & Nashville

[1] 92 South. 461.

Railroad who, at the time of the trial, were out on the general shopmen's strike of 1922. A disqualifying bias or interest in this case against another company, involving alleged negligence of trainmen, could be imputed to these jurors only on merest conjecture. The trial court, so far as the record shows, had no means of knowing any such bias. Mere suspicion, if indulged in, could be applied in favor of defendant, as well as against. One conjecture could be that, in a pending controversy over wages, the employees seeking relief would be interested in lessening the burden of damage claims against the income of their employers. Another, that employees who had broken with another company would be interested in making a friend of this company. A more just view would assume they were engaged in a business controversy in which would enter no desire to cripple or penalize this defendant, but a purpose to do justice in the particular case, if chosen and sworn so to do. The trial court rightly overruled the motion to challenge for cause. Ward v. Meadows, 205 Ala. 432, 88 South. 427.

[7, 8] Defendant's engineer in charge of the train at the time of the accident, testified:

"I know how to run an engine and how to stop one." "I know the best method of stopping an engine."

Stating his action on discovering the man, he said:

"I immediately shut off the steam and applied the emergency brake and sounded the alarm whistle and applied sand."

He was thereafter asked:

"Did you do all that could be done by a skillful engineer when you saw him?" "Did you do all the things that are known to a skillful engineer to stop that engine?"

The court sustained plaintiff's objection to each of these questions. The witness was an expert. He had first given in detail the things done to stop the engine. The questions were the equivalent of asking if anything else could have been done by a skillful engineer to aid in stopping the engine. The questions called for legal testimony. Coming as they did they were not objectionable as leading. It is difficult to frame a question in such situation except in direct form calling for an answer of "yes" or "no." There was error in not permitting an answer to these questions. A. G. S. R. R. Co. v. Linn, 103 Ala. 134, 15 South. 508; B. R. L. & P. Co. v. Hayes, 153 Ala. 188, 44 South. 1032; B. R. L. & P. Co. v. Barrett, 179 Ala. 290, 60 South. 262; Blackmon v. Cent. of Ga. Ry. Co., 185 Ala. 635, 64 South. 592.

[9] In the further course of examination, this witness stated:

"I shut off steam, applied the emergency brake, sounded the alarm whistle—the stock alarm in railroad parlance—and opened the sand valve. These are the things that I did to stop the engine. That is all that is known to a railroad man to do."

The witness further went into an expert discussion as to the distance within which a train may be stopped under varying speeds and conditions. He gave his judgment as to the distance within which he did stop the train. He further said: "I considered it a good stop." This subsequent evidence of the witness cured any error in refusing the questions above. 13 Mich. Ala. Dig., p. 205, § 1058 (2); Wilson Bros. v. M. & O. R. R. Co., 207 Ala. 171, 92 South. 246.

An important issue is presented by the refusal of the general affirmative charge requested by defendant on the count for wantonness. The evidence touching the time and place of the injury does not make a case of wantonness growing out of knowledge of danger to persons by the frequent use of defendant's track as a passway. The question must turn on the evidence touching wanton conduct after the discovery of plaintiff's peril. The accident occurred near 9 o'clock at night, about three-eighths mile west of Trinity. It was a local passenger train going west, containing an engine and some four cars. The track was straight and unobstructed—downgrade. A path ran along at the north end of the ties, frequently used by foot men. There was evidence that deceased was at Trinity shortly before the train passed; that he was drunk; that the track led westward toward his home.

The engineer testified that the engine and all equipment were in good condition, that it had a good headlight, and that he was keeping a lookout ahead from the time he left Trinity. In substance, his testimony touching the accident was: Witness first saw deceased about 250 feet ahead in the act of stepping from the side track onto the main line. He stepped on the main line and walked right due north across the track and stopped on the end of the crossties, and turned and stepped back one foot inside of the rail and the pilot beam hit him and knocked him down, knocked him about five feet. He says:

"I saw that he staggered on the main track, and thought there was something the matter with him." "I believed he was in danger of being run over by the engine."

Witness further said the train ran about 200 feet beyond the point of the accident before coming to a stop—some 420 to 450 feet after putting on the emergency. The speed of the train was about 25 miles per hour. His evidence of giving the alarm and stopping the train is given above.

There was a sharp conflict in the evidence as to whether an alarm signal was given. One witness testified she was watching the lights of the passing train, saw it slow up

and stop, and that the whistle did not blow until it came to a stop; that it then blew and the train backed up. There was other corroborating evidence that it first blew about the time it stopped. There was also corroborative evidence of the engineer's statement that the alarm was given when the emergency went on and the train brought to a quick stop.

There was further evidence that tracks were found in the path at the north end of the ties near where deceased and his hat were found; that these tracks showed both feet on the path, and signs of skidding and scraping the ground. The physician testified that deceased had a bruise on his left hip, "kinder on the left side of the back."

The engineer testified his eyes were good, and by the headlight he could see a man about 250 feet ahead on the left of the main line, or about 300 to 350 feet when on the main line. These estimated distances are less than that within which he thinks he stopped the train. The fireman says a man could be seen by the headlight far enough ahead to stop before striking him.

[10] We have already drawn out this review of the evidence to an undesirable length. Its weight was for the jury. In considering the whole evidence it was in their province to find in keeping with all the evidence of the engineer, or to reject a part and accept a part.

Thus viewed, they could find the engineer was mistaken as to the distance deceased was ahead when discovered; that no whistle was blown until the back up signal was given; that deceased was in fact seen far enough ahead to stop the train, and in such staggering condition as to indicate peril; that deceased did not stop on the end of the crossties, turn, and step back between the rails, but that both feet were in the path, the left side of his body projecting into the wake of the passing engine.

[11, 12] Under one or more of these versions of the testimony, the question of wanton injury was for the jury. For instance, if they should believe no alarm was given, but accept all the rest of the engineer's statement, they would confront a situation like this: A staggering man seen 250 feet ahead; after taking two or three steps, he stops in a position of imminent danger; the train cannot be stopped in time to save him; the only chance for him is to sound the alarm in the hope it will arouse him to step out of danger. If the jury should find this situation, can we say as matter of law there was a total want of evidence of conscious indifference to consequences which may be. termed wantonness? Our conclusion is that the case properly went to the jury on both counts. Snider v. A. G. S. R. Co. (Ala. Sup.) 97 South. 210;[2] A. G. S. R. Co. v. Sanders, 203 Ala. 57,

82 South. 17; L. & N. R. R. Co. v. Rayburn, 198 Ala. 191, 73 South. 461; N. Ala. Ry. Co. v. Guttery, 189 Ala. 604, 66 South. 580; Cent. of Ga. Ry. Co. v. Stewart, 178 Ala. 651, 59 South. 507; Southern Railway Co. v. Stewart, 164 Ala. 171, 51 South. 324; L. & N. R. R. Co. v. Calvert, 172 Ala. 597, 55 South. 812; A. G. S. R. Co. v. McWhorter, 156 Ala. 269, 47 South. 84; Southern Railway Co. v. Forrister, 158 Ala. 477, 48 South. 69; Southern Railway Co. v. Shelton, 136 Ala. 214, 34 South. 194; Cent. of Ga. Ry. Co. v. Partridge, 136 Ala. 587, 34 South. 927; A. G. S. R. Co. v. Burgess, 114 Ala. 587, 22 South. 169; M. & C. R. R. Co. v. Martin, 131 Ala. 269, 30 South. 827.

[13,14] In considering the motion for a new trial, it is unnecessary for us to decide whether the evidence in support of the wanton count was such as would lead us to sanction a verdict thereon. That conscious disregard of known duty in the face of imminent danger to human life which we call wanton conduct should never be lightly inferred by the jury. The same sense of humanity, which has established the doctrines of our law, should be accorded to those in charge of the great, but dangerous, agencies of travel and commerce.

In this case the issue of simple negligence after the discovery of peril was also before the jury. We cannot disturb a verdict thereon, rendered by the jury and sustained by the trial judge, without violence to the rules, well grounded in reason, which govern this court on such motions.

[15] Defendant's refused charge No. 52 ignores that feature of the evidence tending to show negligent failure to give an alarm after discovery of peril.

[16] Charge No. 57 ignores the evidence tending to show that, when discovered on the track, the deceased was in a drunken, staggering condition, and that the engineer at once saw he was in danger.

[17,18] Charge No. 58, if not otherwise faulty, would not be a proper instruction to a jury without some definition of positive and negative testimony. It would tend to mislead the jury into accepting positive as against negative testimony of the matter referred to without regard to the other evidence in the cause. The finding upon a material fact must be based on the whole evidence.

We find no error in the record.

The judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, and THOMAS, JJ., concur.

### On Rehearing.

BOULDIN, J. Our attention is called on application for rehearing to the fact that

---

[2] Ante, p. 119.

count 2, based on wanton injury, does not aver the discovery of intestate's peril in time to avoid the injury.

[19] Lest our expression in the opinion passing on this count be misleading, we merely add that no such averment is necessary. We adhere to the rule often declared on the subject. Jackson v. Vaughn, 204 Ala. 543, 86 South. 469; Barbour v. Shebor, 177 Ala. 304, 58 South. 276; Birmingham-Tuscaloosa Railway & Utilities Co. v. Carpenter, 194 Ala. 141, 69 South. 626; Birmingham Ry. & Elect. Co. v. Barrett, 179 Ala. 279, 60 South. 262; Yarbrough v. Carter, 179 Ala. 357, 60 South. 833; Edwards v. Earnest, 206 Ala. 1, 89 South. 729, 22 A. L. R. 1387.

After careful consideration, we adhere to our opinion in respect to the motion for a new trial. Cobb v. Malone, 92 Ala. 630, 9 South. 738; L. & N. R. R. Co. v. Abernathy, 192 Ala. 629, 69 South. 57.

Application for rehearing overruled.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.