BEATTY, Justice
(dissenting).
I would reverse the conviction because I do not believe there was a conflict in the evidence which justified the jury' in finding the petitioner guilty of the lesser included offense rather than the completed offense of rape. The Court of Criminal Appeals, 350 So.2d 1067, was wrong when it stated that “The question presented ... is there sufficient evidence in the record . to sustain the verdict of assault with intent to ravish?” Rather, the question was whether there was a conflict in the evidence of rape which would allow the jury to be charged on and render a verdict for the lesser offense of assault with intent to ravish. Tit. 15, § 323, Ala.Code; Edwards v. State, 33 Ala.App. 386, 34 So.2d 173 (1948).
If a man carnally knows a woman by force and against her will, that is the consummated crime of rape. Taylor v. State, 249 Ala. 130, 30 So.2d 256 (1947). The only force required is that degree of duress necessary to effect the penetration without her consent, Cole v. State, 19 Ala.App. 360, 97 So. 891 (1923), and the slightest penetration is sufficient carnal knowledge. Thomas v. State, 53 Ala.App. 232, 298 So.2d 652 (1974). The fact that a physician cannot detect *1070 laceration of the female’s vagina, vulva or pubic area does not negative the claim of penetration, although it may tend to prove consent. Smith v. State, 57 Ala.App. 164, 326 So.2d 692 (1975). And since the slightest penetration is sufficient, an ejaculation of semen is not required to support a rape conviction; indeed recent studies, of which we may take judicial knowledge, report the absence of sperm in nearly half of the number of rape victims examined, including some raped by more than one man. The same investigation found that a large number of convicted rapists suffer from “sexual dysfunction” which often interfered with ejaculation. Newsweek Magazine, Oct. 17, 1977, p. 119. With deference to some of my judicial colleagues who disparage my interest in empirical data, these findings support the wisdom of the common law which never did and does not now require the presence of male semen, or even outward signs of force, constructive force and penetration being sufficient. Herndon v. State, 2 Ala.App. 118, 56 So. 85 (1911).
In support of the affirmance of the petitioner’s conviction of the lesser offense, the State has cited two cases, Williams v. State, 51 Ala.App. 1, 282 So.2d 349 (1973), and Kelsoe v. State, 50 Ala.App. 378, 279 So.2d 549 (1973). However, neither of these cases is apropos here. In Williams the accused testified to make a clear conflict in the evidence. That conflict allowed the jury to find guilt of a lesser included offense. In the instant case the accused did not testify. In Kelsoe the examining physician testified that it was not conclusive that the victim had had intercourse, and that the hymen was still intact, a fact inconsistent with intercourse, he stated, because ordinarily it is ruptured on the first occasion of intercourse. Therefore, a conflict existed in Kelsoe also. Both cases cited by the State contained evidence that was inconsistent with the completed offense of rape as the authorities cited above have defined it.
Now what was the evidence in this case? Quoting from the factual findings of the Court of Criminal Appeals, 350 So.2d 1067, which are verified by the record, the prose-cutrix testified that the petitioner:
[Gjrabbed her and pushed her against the door. He had his body pushing her against the wall, and he had his arm around her neck holding her against the wall. The appellant at that time told her he had a knife on her throat. He dragged the prosecutrix back toward the den, and forced her to lay the gun down. He then turned out the lights while holding her. That she could feel the knife against her throat. After he turned out all the lights, he dragged prosecutrix down the hallway to her bedroom. While he carried her back to the bedroom, he was holding the knife on her throat. He made her undress herself, and raped her. His private parts entered her private parts. She was in her menstrual cycle. The appellant dragged her to the bathroom and back to her bedroom, and raped her four or five times. The appellant threw her on the bed, he was rough with her, he grabbed her around the throat and neck, he held her down. She resisted him, and he choked her by putting his hands around her throat. Prosecutrix further testified that appellant stayed with her in her bedroom about three hours, and left about the time prosecutrix heard the noise of her brother loading some equipment on his truck in back of the house. Prosecutrix testified she called her brother, and immediately complained to him that she had been raped, and shortly after complaining to her brother made complaint to others that she had been raped.
Prosecutrix further testified that she was examined by her doctor on the afternoon of September 15, 1974, that she told him she had been raped, and wanted an examination, that her doctor found no semen on her body, or clothing, and no bruises on her neck, shoulders, arms, and legs, and that there were none on her body anywhere, except one about the size of a quarter on her breast, and that it was caused by appellant biting her. She further testified she had no injuries visible anywhere on her, except the bruise on the breast.
*1071 Prosecutrix further testified that the appellant left his knife in her bed, that the screen door was cut, that she heard it being cut just before appellant appeared in her den.
This testimony is not only consistent with rape by force, fear or intimidation, but with the completed offense of rape. Where is the evidence of an incompleted rape? Because she testified that he raped her four or five times in the space of about three hours, does that evidence create an inference of assault but not rape? Is there any reasonable inference of consent contained in that express testimony which would exclude rape, even though she resisted him, and characterized the sexual conduct as rape? To conclude from her express statements either that the penetration was not effected or that it was effected with her consent after assault is pure conjecture.
And then there is her evidence of her physical examination on the afternoon of the attack, when she said that her physician found no semen, and no bruises except one on her breast where, she testified, the petitioner bit her. I submit that it is perfectly consistent with her description of the event that she had no outward signs of injury. Yes, he was rough with her, he dragged her down the hallway, he carried her to the bathroom, he choked her, and he held a knife to her throat. His private parts entered her private parts. Whether she should have exhibited the appearance of a heavyweight boxer after a championship bout is not the point, and the absence of such an appearance does not create a conflict in her evidence of the consummated crime of rape, since it is undisputed that he penetrated her with force. Indeed, since rape may be committed by intimidation, which was also shown, the jury could not have inferred that the completed crime was not committed. Even if there were no other indicia of actual force, the bruise on her breast was not disputed, and thus raised no conflict in that aspect of the evidence.
I am, of course, aware of the rule allowing the jury the right to believe one part of a witness’ testimony and reject another. Southern Ry. Co. v. Gantt, 210 Ala. 383, 98 So. 192 (1923). But it is equally true that “a mere possibility that a result might have been wrought in a certain way or by certain means cannot serve to contradict or to reflect upon the credibility of positive testimony of facts (not opinions) that is otherwise not impeached or rendered of doubtful verity.” Louisville & N. R. Co. v. Moran, 200 Ala. 241, 76 So. 7 (1917). Undisputed evidence from a competent witness cannot be disregarded by the jury, Farmers & Ginners Cotton Oil Co. v. Reliance Ins. Co., 341 So.2d 147 (Ala.1976), and inferences contrary to direct, uncontradicted testimony of facts consistent with other proven facts cannot be indulged. Woodward Iron Co. v. Goolsby, 242 Ala. 329, 6 So.2d 11 (1942).
For these reasons I would reverse and remand the case to the Court of Criminal Appeals for an order granting the petitioner a new trial.