These consolidated appeals concern an action for damages based on injuries suffered by the plaintiff, Richard Talmadge Beam, when he was run over by a train. Beam appeals from a summary judgment entered in favor of the defendants, Seaboard System Railroad, Inc. ("Seaboard System"), and its engineer, Sammy Chestnut. We reverse.
Shortly after one o'clock on the morning of July 29, 1983, Beam was struck by a Seaboard System train traveling from the Gadsden storage yard to the Goodyear Tire and Rubber Plant in Gadsden. He suffered injuries including disfigurement, paralysis, and quadriplegia as a result of the accident. At the time Beam was hit, he was a trespasser on the Seaboard System track. It is undisputed that when he was run over, Beam was lying unconscious between the rails of the track, intoxicated from consuming beer and using marijuana throughout the previous afternoon and evening.
A railroad owes no duty to prevent injury to an undiscovered trespasser on its track. Atlantic Coast Line R.R. v. French,261 Ala. 306, 310, 74 So.2d 266, 269 (1954); Kendrick v.Birmingham Southern R.R., 254 Ala. 313, 320, 48 So.2d 320, 326
(1950). But when the railroad discovers the trespasser, it has the duty to exercise reasonable care to avoid injuring him or her. French and Kendrick, supra. In Kendrick this Court held that the law permits recovery "for a negligent failure to use preventative means to avert injury after a discovery of peril, and after a knowledge that the trespasser cannot extricate himself in time to avoid being injured." 254 Ala. 313, 320,48 So.2d 320, 326. The duty of reasonable care arises, however, only upon discovery of the trespasser. In Atlantic Coast LineR.R. v. French, 261 Ala. 306, 310, 74 So.2d 266, 269 (1954), we stated the rule of liability as follows:
 " 'It is well established in this jurisdiction that in order to predicate liability for subsequent negligence, the defendant must be shown to have had actual knowledge of the plaintiff in a perilous position, and thereafter negligently [failed] to use all the means at his command and known to skillful engineers, so circumstanced, to avert damage to the plaintiff, when to have promptly and duly used such means could have averted the accident.' " (Quoting Louisville N.R.R. v. Griffin, 240 Ala. 213, 216, 198 So. 345, 347 (1940).)
The complaint in this case alleges that after Chestnut discovered Beam on the track, Seaboard System and its engineer were guilty of wanton and/or negligent conduct in operating the train. Beam contends *Page 929 
that Chestnut became aware that Beam was on the track earlier than he says he did, and that after becoming aware that he was on the track Chestnut failed to take prompt action to stop the train. According to Beam's complaint, this allegedly wanton and/or negligent conduct caused his injuries.
The defendants answer that Chestnut did not identify Beam as a person on the tracks until he was within 150 feet of him, and that he tried every reasonable way to stop the train before it ran over the plaintiff. Chestnut testified in his deposition that he sighted an object on the track when he was about 200 feet ahead of it and then applied the emergency brakes. Only when he was around 150 feet from the object, he says, was he able to identify the object as a human being. Chestnut and Seaboard System contend that, as a matter of law, there was nothing negligent or wanton about the manner in which Chestnut stopped the train, and that they therefore were entitled to summary judgment.
Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R. Civ.P.; Wilson v. Brown,496 So.2d 756, 758 (Ala. 1986). In Mann v. City of Tallassee,510 So.2d 222, 225 (Ala. 1987), we observed that "summary judgment should be granted only when, after viewing the evidence in a light most favorable to the non-moving party, it appears that there is no genuine issue of material fact, and the non-moving party cannot prevail as a matter of law." (Quoting Hale v. City of Tuscaloosa, 449 So.2d 1243, 1245 (Ala. 1984).) This Court has held that, "if there is a scintilla of evidence which supports the position of the non-moving party, summary judgment should not be granted." Cole v. First NationalBank of Tuskaloosa, 485 So.2d 717, 719 (Ala. 1986).
Beam contends that there was a genuine issue of fact in this case regarding the point along the track at which the engineer became aware that he was on the track. In support, he offers five pieces of evidence: a federal regulation governing the arrangement of train headlights, the opinion of an expert witness, a Seaboard System storage yard rule, an excerpt from Chestnut's deposition, and a subsequently made measurement that allegedly casts doubt upon Chestnut's deposition testimony. We hold that the last two items present a scintilla of evidence creating of a genuine issue of material fact, which precludes summary judgment for the defendants.
Among Beam's evidence are a federal regulation, 49 C.F.R. § 229, 125(b), and the affidavit of an expert witness. The regulation requires that headlights be arranged so as to illuminate a person who is at least 300 feet in front of the train. The plaintiff's expert testified that if the headlights complied with this regulation, Chestnut's testimony regarding his distance from Beam when he saw him is grossly inaccurate. This evidence tends to prove only that Chestnut was capable of seeing Beam earlier than he says he did, not that he actually saw Beam any earlier. For this reason, the regulation and the affidavit of the expert witness do not present a scintilla of evidence putting in issue the location of the engineer when he discovered Beam. That Chestnut's headlights illuminated the track 300 feet ahead, and that he could or might have seen Beam earlier if he had been keeping a careful lookout are immaterial. Beam was a trespasser, and Chestnut did not owe him the duty to discover him lying on the track at all.
Beam also offers a Seaboard System storage yard rule that requires that trains be prepared to stop within one half of the range of vision. Chestnut testified in his deposition that his range of vision was around 300 or 400 feet. Under the storage yard rule, therefore, Chestnut should have been prepared to stop the train within approximately 150 to 200 feet. Chestnut testified in his deposition that the train traveled about 300 feet from the time he hit the emergency brake until it stopped. That the actual stopping distance was greater than that required by the storage yard rule may tend to prove that Chestnut was running the train at an excessively high speed when *Page 930 
he discovered Beam. That fact, however, is immaterial in Beam's action for subsequent negligence. "The question in this case on the subsequent negligence counts was not what the locomotive was doing before or when the plaintiff's intestate was discovered on the track, but what those in charge of the train did after the discovery of the peril of the plaintiff's intestate." Kendrick v. Birmingham Southern R.R., 254 Ala. 313,321, 48 So.2d 320, 327 (1950).
Because Beam was a trespasser on the track, the railroad and its engineer are liable only for unreasonable conduct on the engineer's part after he discovered Beam on the tracks.Atlantic Coast Line R.R. v. French, 261 Ala. 306, 309,74 So.2d 266, 269 (1954). To prevail in this action, Beam must prove that Chestnut failed to exercise reasonable care in stopping the train subsequent to his discovering Beam. The storage yard rule is immaterial in Beam's action, because it does not tend to establish subsequent negligence.
Beam also submits Chestnut's own estimates of distance found in Chestnut's deposition, and a proportion which he infers from the deposition. He argues that the jury may apply the proportion to Beam's subsequently made measurement and thereby conclude that Chestnut became aware that Beam was on the track when he was further away from Beam than he claims. Beam derives the proportion as follows: Chestnut testified in his deposition that he recognized Beam as a person on the track when he was about 150 feet from him. Chestnut also testified that the train ran over Beam about 300 feet down the track from the last public crossing it had passed. Beam maintains that it is reasonable to infer that Chestnut identified Beam as a human being in peril when the train was about one half the distance from the public crossing to the point of impact.
Beam infers that a point at one half the distance from the public crossing to the point of impact is an accurate description of the point at which Chestnut identified Beam as a person on the track, even if Chestnut's estimates of distance are inaccurate. The plaintiff measured the distance from the public crossing to the point of impact to be 680 feet, not 300 feet as Chestnut estimated. Beam argues that, based on this measurement and the proportion inferred from Chestnut's deposition, a reasonable inference arises that Chestnut was 340 feet from Beam, not 150 feet as he testified in his deposition, when he identified Beam as a person on the track.
Beam's argument is tenuous, because it would require the jury to infer the proportion from Chestnut's deposition, but reject Chestnut's estimates of distance upon which the proportion is based. However, in reviewing a summary judgment, we indulge all reasonable inferences from the facts, as viewed most favorably to the non-movant. Kimbrel v. Mercedes-Benz Credit Corp.,476 So.2d 94, 96 (Ala. 1985). This standard requires that we conclude that there is a scintilla of evidence in support of Beam's position. Moreover, in a case factually similar to Beam's, we have held that the issue of the engineer's location when he discovered the plaintiff trespasser on the track is for the jury. Louisville N. R.R. v. Rayburn, 198 Ala. 191,194-95, 73 So. 461, 463 (1916). In Rayburn, the railroad appealed from a judgment based on a jury verdict for the plaintiff, claiming that the trial court erred in refusing to grant its motion for directed verdict. This Court affirmed.
Like Beam, the plaintiff in Rayburn was an intoxicated trespasser on the defendant's railroad track and was injured when one of the defendant's trains ran over him. At issue was the engineer's distance from the plaintiff when he discovered that there was a human being on the track. The defendant offered evidence that drizzling rain and fog obscured the engineer's view of the track and prevented the engineer from discovering the plaintiff until he was very close to him. The plaintiff countered with testimony that it was not rainy, cloudy, or foggy. This Court held that the issue was for the jury. "If the afternoon was not rainy, cloudy, and foggy, of course, it was for the jury to decide at what distance from Rayburn the engineer, who was looking ahead, saw Rayburn in a dangerous place on the track and at what *Page 931 
distance he in fact was when he discovered that the object was a human being." Rayburn, 198 Ala. at 194-95, 73 So. at 463.
Rayburn is not procedurally identical to Beam's case, sinceRayburn involved the denial of a directed verdict for the defendant and Beam's case concerns a summary judgment granted for the defendants. However, the substantive issue in both cases is the same, and Rayburn is authority for sending the issue to the jury. In light of Rayburn, we conclude that the plaintiff has demonstrated a genuine issue of material fact, which precludes summary judgment. Accordingly, let the judgment of the trial court be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.