(32 South. 17)

ALABAMA GREAT SOUTHERN R. CO. v. SANDERS. (6 Div. 761.)

(Supreme Court of Alabama. Nov. 21, 1918. Rehearing Denied May 22, 1919.)

1. RAILROADS ⬤400(14)—INJURY TO PERSON ON TRACK—QUESTION FOR JURY.

Whether engineer or firemen or both saw plaintiff's intestate on the track, and after discovery of his perilous position whether they used all means and appliances known to prudent and skillful agents to avoid the injury, *held*, under the evidence, for the jury.

2. RAILROADS ⬤400(10)—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE —QUESTION FOR JURY.

Affirmative charge based on theory that contributory negligence of plaintiff's intestate, killed by a train while walking on the track of defendant railroad, continued until the moment of his death, and was subsequent to any negligence on the part of defendant's agents or servants, *held* properly refused.

3. RAILROADS ⬤390—INJURY TO PERSON ON TRACK — CONTRIBUTORY NEGLIGENCE BARRING RECOVERY.

Contributory negligence of plaintiff's intestate, killed by a train while walking on track, to defeat recovery for subsequent negligence on the part of defendant must have been the negligent act or omission of intestate, with knowledge on his part of the then present and impending peril.

4. RAILROADS ⬤400(10)—INJURY TO PERSON ON TRACK — CONTRIBUTORY NEGLIGENCE— QUESTIONS FOR JURY.

Theory that plaintiff's intestate, killed by a train while walking on the track of defendant railroad, walked down the track when he knew a train was scheduled to approach at or about the time of the accident, *held* not established by the undisputed evidence so as to entitle defendant to an affirmative charge.

5. EVIDENCE ⬤471(10)—EYEWITNESS—ABILITY TO SEE.

Testimony of a witness who saw the accident that he measured on the track from a point down the track in the direction from which the train was moving and from which point he could see the place where intestate was killed, and that the distance between the two points was 17 rail lengths, was competent.

6. EVIDENCE ⬤514(3)—OPINION EVIDENCE— ADMISSIBILITY.

Witness, an engineer, who qualified himself as an expert, and who had examined the track and was shown the point at which intestate was killed, was properly permitted to testify as to whether engineer could have materially reduced the speed of the train in a distance of 15 rail lengths.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Action by Mrs. Edna C. Sanders, administratrix, against the Alabama Great South-

ern Railroad Company. Verdict and judgment for plaintiff, and defendant appeals. Affirmed.

·A. G. & E. D. Smith, of Birmingham, for appellant.

Brown & Ward, of Tuscaloosa, for appellee.

GARDNER, J. Plaintiff's intestate, T. E. Sanders, met his death while walking on the track of the Alabama .Great Southern Railroad Company, between what is referred to as the Olmstead Crossing and the flag station Grimes on said road; said intestate being run over and killed by the passenger train known as train No. 6, going in the direction of Birmingham.

The cause was submitted to the jury upon those counts seeking recovery as for subsequent negligence; plaintiff relying upon the negligence of the fireman or engineer, in charge of the locomotive after discovery of intestate's perilous position; and on the part of the defendant, upon the pleas of general issue and contributory negligence of plaintiff's intestate. These issues were submitted to the jury for determination, resulting in a verdict and judgment for the plaintiff, from which the defendant prosecutes this appeal.

It is insisted by counsel for appellant that the defendant was entitled to the affirmative charge upon three grounds; the first here treated being a lack of evidence to show any negligence on the part of the fireman or engineer after discovery of the perilous position of plaintiff's intestate.

Plaintiff's intestate was walking up the track in the same direction in which the train was running, and therefore his back was to the approaching train. His hearing was somewhat impaired, but as to exactly what extent there is some uncertainty. There were eyewitnesses to the accident, and what is attested as a "correct" diagram of the track at that point—showing where the track was straight and where curved and to what extent, as well as the point at which Sanders was killed—was offered in evidence and is set out in the record.

[1] We will not here detail the evidence, but we are of the opinion that the testimony of the eyewitnesses, considered in connection with that of Engineer Foster, who was used as an expert witness, and also taken in connection with the testimony of the fireman and engineer, as found in their answers to the interrogatories filed by the plaintiff, was sufficient from which the jury could reasonably infer that the fireman of the locomotive, on this occasion, was looking ahead and could have seen, and did see, plaintiff's intestate on the track for a distance of 15 rail lengths (of 33 feet each) before he was struck, and that the engineer was looking ahead and could see, and did see, the intes-

tate for a distance of 5 rail lengths before he was struck; that no bell was rung, no warning given by the blast of a whistle, and no effort made to check the speed of the train until the intestate was struck. We therefore think that, under the tendencies of the evidence in this case, it was for the jury to determine whether or not the fireman and the engineer, one or both, saw the intestate, and after discovery of his perilous position whether they used all means and appliances known to prudent and skillful agents, in that particular, to avoid the injury. Brown & Flowers v. Cent. of Ga. Ry. Co., 197 Ala. 71, 72 South. 366; Herring v. L. & N. R. R. Co., 195 Ala. 422, 70 South. 749; Cent. of Ga. Ry. Co. v. Ellison, 75 South. 159;[1] Cent. of Ga. Ry. Co. v. Blackmon, 169 Ala. 304, 53 South. 805; L. & N. R. R. Co. v. Calvert, 172 Ala. 597, 55 South. 812; A. G. S. R. R. Co. v. McWhorter, 156 Ala. 269, 47 South. 84.

As was said in the McWhorter Case, supra, and applicable here, the jury could infer that a loud blast of the whistle might have given warning of the approach of the train in time for him to have leaped from the track and thus escaped, which would have required but a slight degree of time and space—aside from the proof of a failure to ring the bell, or any diminution in the speed of the train. L. & N. R. R. Co. v. Calvert, supra; So. Ry. Co. v. Stewart, 153 Ala. 133, 45 South. 51; Carlisle v. A. G. S. R. R. Co., 166 Ala. 591, 52 South. 341; So. Ry. Co. v. Gullatt, 158 Ala. 502, 48 South. 472; So. Ry. Co. v. Lawler, 11 Ala. App. 241, 65 South. 857; L. & N. R. R. Co. v. Abernathy, 197 Ala. 512, 73 South. 103.

[2] It is insisted in the second place that the defendant was entitled to the affirmative charge because of contributory negligence on the part of the plaintiff's intestate, which continued until the moment of his death, and was subsequent to any negligence on the part of defendant's agents or servants.

[3] Contributory negligence to defeat recovery for subsequent negligence on the part of the defendant must have been the negligent act or omission of intestate with knowledge on his part of the then present and impending peril. So. Ry. Co. v. Stewart, supra.

The proof tends to show that the intestate left the home of one Thompson, residing near the railroad, at what is known as Olmstead Crossing, on the morning of the fatal accident, to go to Grimes station—a distance of 1½ miles from that point—to catch this passenger train No. 6 for his home at Bibbville, also on said road. There was evidence tending to show that according to the time of one Dyer, who was also at the home of Thompson with the deceased, said train No. 6 was due within about 15 minutes; but the proof also tends to show that according to the watch of intestate it was not due until 30 minutes; and that he stated, as he left the house, that he would catch the train, and that he had 30 minutes within which to walk

a mile and a half. The jury could therefore reasonably infer that according to the belief of intestate he had sufficient time to walk to Grimes station before said train was due.

There is no evidence going to show that at the time the train was in the immediate approach of intestate he gave any indication of being aware of his then impending peril. And while his use of the track constituted him a trespasser under the facts of this case, and precluded any recovery as for initial or antecedent negligence on the part of the defendant, yet, under the decisions of this court, the mere fact that he continued upon the track did not relieve the defendant from liability for negligence of his servants or agents after discovery of his perilous position. We are therefore of the opinion that the affirmative charge was properly refused upon the theory of contributory negligence having been established as a matter of law, such as to prevent a recovery.

[4] It is further insisted that the defendant was entitled to the affirmative charge upon the theory it had proven plea 4 without dispute. Demurrer was interposed to this plea and overruled. It is insisted, whether the plea was good or bad, if issue was taken upon the same and averments established without conflict, that the defendant was entitled to the affirmative charge.

We are inclined to the view that the court below in construing this plea gave the same the construction that, in fact, it merely charged in varying language contributory negligence on the part of plaintiff's intestate, after knowledge of his then impending peril, as set up in the other pleas. But, whether the plea is to be so construed or not, we are still of the opinion that its averments were not established by the undisputed evidence. If we give a very strict and literal construction, even then it charges that the plaintiff's intestate negligently went on, or in dangerous proximity to, the track of the defendant, and walked down the same when he knew a train of the defendant's was scheduled to approach at or about that time. As previously stated, the evidence tends very strongly to show that the intestate did not know that a train was scheduled to approach at that time, and according to his watch it was not due until 30 minutes, which he considered ample time in which to walk the distance, and reach Grimes station in time to catch the train.

[5] The witness Herrin, who saw the accident, testified as to the location of the point at which intestate was killed; that he measured on the track from a point down the track in the direction from which the train was moving, and from which point he could see the place where intestate was killed, and that the distance between the two points was 17 rail lengths, a rail being 33 feet long. Defendant's objection to this evidence was overruled.

As previously stated, this was testimony of an eyewitness who had knowledge of the location, and who made the measurement himself while on the ground, and was therefore competent. K. C., M. & B. R. R. Co. v. Weeks, 135 Ala. 614, 34 South. 16; Birmingham Min. R. R. Co. v. Harris, 98 Ala. 326, 13 South. 377; Keith v. State, 15 Ala. App. 129, 72 South. 603.

[6] The witness Foster, an engineer, qualified himself as an expert, examined the track, and was shown the point at which the intestate was killed, and was properly permitted to testify as to whether or not, in his opinion, the engineer could have materially reduced the speed of the train in a distance of 15 rail lengths, had the fireman at that distance given him warning so to do. L. & N. R. R. Co. v. Rayburn, 198 Ala. 191, 73 South. 461.

As previously stated, we think there was sufficient evidence tending to support the theory of the plaintiff that the fireman could and did see the man on the track from this distance, and the question was not subject to the objection that the hypothetical question was not based upon a theory supported by any tendencies of the evidence.

An examination of the oral charge of the court, in connection with charges given at the request of the defendant, does not impress us that a new trial should have been granted upon the ground that the verdict was contrary to the law as given by the court. Nor are we persuaded there was error in denying the motion for a new trial upon the other ground that the verdict was contrary to the great preponderance of the evidence. The rule in regard to such questions, in cases of this character, is too well understood to be here repeated, and we do not think it would serve any good purpose to enter into a discussion of the testimony. Suffice it to say the evidence has been given most careful consideration and deliberation, and we are unwilling, under the rule so well established, to disturb the ruling of the court in denying the motion.

It results that the judgment appealed from will be here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.