(98 South. 18)
NORTHERN ALABAMA RY. CO. v. HENSON. (8 Div. 524.)

(Supreme Court of Alabama. Nov. 8, 1923. Rehearing Denied Nov. 29, 1923.)

Railroads ⬤⟿400(14)—Evidence insufficient to make jury question as to whether trainmen saw small boy sleeping on the tracks at midnight in time to avoid injury.

The facts (1) that a railroad track was straight for about half a mile approaching the point where a small boy, asleep between the rails at night, was killed, (2) that the headlight enabled the enginemen to see along the track for about 600 feet, and (3) that they were keeping a lookout, did not make a question for the jury as to whether they saw deceased and his companion, and saw that they were human beings in time to avoid injuring them.

Appeal from Circuit Court, Franklin County; Chas. P. Almon, Judge.

Action by J. L. Henson against the Northern Alabama Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The plaintiff, as administrator of his deceased son, sues the Northern Alabama Railway Company for killing his son by a train. There were three counts in the complaint. The first count was simple negligence, and was eliminated by the general charge. The second count was for subsequent negligence, and the third count for wanton injury. The case was submitted to the jury on the last two counts, and a verdict returned for the plaintiff for $6,000. Defendant made a motion for a new trial, which was overruled.

The deceased and William Hughes, both young boys, were lying down upon the railroad track in the open country asleep. They were lying between the tracks, with their feet toward the approaching train. The Hughes boy had on a white shirt and a white jersey sweater, without a coat. It does not appear how the deceased was dressed. It

was between 12 and 1 o'clock at night, and it was a dark night. The track was straight for about half a mile, and between a half of a quarter and a quarter of a mile there was a grade or elevation in the track, and after turning over that grade the train was running down grade to where the boys were asleep. The evidence did not show whether it was a freight train or a passenger train, nor the size or length of the train, which was running about 40 miles an hour. There was a road crossing whistling board near where the boys were asleep, and the road crossing signal was blown about where they were asleep or just after passing them. No other signals were given. The Hughes boy discovered the train and jumped off the track. He testified:

"Up to the time it killed the boy I don't think it blew. I don't know what attracted my attention to the approach of the train. I just got off, and didn't know anything hardly until the train had passed me. In some way I was awakened. The train did not stop."

The plaintiff introduced Ferris Keys as a witness, who testified that on the night the boy was killed he was fireman for the defendant, and testified that he was fireman on the train going from Russellville toward Tuscumbia when the young son of J. L. Henson was killed. Other than this statement there is no evidence in the record to show that the train on which Ferris Keys was fireman killed the deceased, except the fact that this train went north over the railroad track that night. Keys testified that he did not know the point where the boy was killed nor that he had been killed. He stated:

"I didn't see any boys on the track, and I didn't know any were there. I didn't know anything about it until I heard it the next day."

He further stated that he did not know what time his train left Russellville, and that it was running about 2 hours and 20 minutes late, but he did not state the schedule of the train. This witness also testified as follows:

"I was keeping a lookout ahead that night. I always keep a lookout. After I fix my fire on the engine I get on the seat box and look out. I was sitting on the box keeping a lookout along this place. The engine had a headlight, and I could see a very considerable distance ahead along the track. I judge I could see along the track some 500 or 600 feet ahead of us."

He stated also that the engineer was keeping a lookout. On cross-examination he testified as follows:

"I don't know just exactly where this boy was killed. I only heard the people talking about it. I don't know just when I passed the point where he was killed. I was sitting on the seat box and looking out. I can't say right then whether I was looking out on the track or not, because it was between the road crossings, you know. We have always got an eye on the middle of the track looking out for somebody when we are not performing other duties. I had put in a fire leaving the Junction, and of course when you do that at night you are a little bit blind. I don't know whether I was looking out right at the point where the boy was killed. I didn't see any boys on the track. I didn't know they were there. I didn't know anything about it until I heard it the next day."

The defendant introduced no evidence.

Bankhead & Bankhead, of Jasper, for appellant.

The burden of proof is upon the plaintiff to make out his case, both upon the wanton count and the subsequent negligence count. A. G. S. R. R. v. Smith, 196 Ala. 77, 71 South. 455; Jolley v. So. Ry. Co., 197 Ala. 60, 72 South. 382; Central of Ga. v. Moore, 200 Ala. 213, 75 South. 971; Carlisle v. A. G. S., 166 Ala. 591, 52 South. 341; L. & N. v. Jones, 191 Ala. 484, 67 South. 691.

Harsh, Harsh & Harsh, of Birmingham, for appellee.

The doctrine of scintilla of evidence prevails in Alabama, and the court below cannot be reversed for refusal to give the general affirmative charge, when there is any positive evidence, however slight, or any inference which might be drawn from such evidence, tending to support the case made by the complaint. So. Ry. Co. v. Bush, 122 Ala. 470, 26 South. 168; Brown v. Mobile Elec. Co., 207 Ala. 61, 91 South. 805; Penticost v. Massey, 201 Ala. 261, 77 South. 675; K. C., M. & B. Co. v. Ferguson, 143 Ala. 513, 39 South. 348; L. & N. v. Holland, 173 Ala. 675, 55 South. 1001; Crandall-Pettee v. Jebeles & Colias, 195 Ala. 152, 69 South. 964; L. & N. v. Hutcherson, 174 Ala. 609, 57 South. 379; S. S. S. & I. Co. v. Redd, 6 Ala. App. 404, 60 South. 468; A. G. S. v. Robinson, 183 Ala. 265, 62 South. 814; L. & N. v. Abernathy, 192 Ala. 634, 635, 69 South. 57; So. Ry. v. Gullatt, 158 Ala. 502, 48 South. 472.

SOMERVILLE, J. The liability of the defendant railroad company depends upon the answer to a single inquiry: Did the engineer or fireman on the engine discover the presence of the intestate on the track in time to have avoided killing him either by stopping the train or by arousing him by warning signals to a timely understanding of his peril? Appellant insists that this question was erroneously submitted to the jury, because there was nothing in the evidence to show, or to permit a reasonable inference, that either of the enginemen discovered the presence of the intestate at all, and that, even though they had discovered him at some stage before the tragedy, there is nothing to show, or to permit a reasonable inference,

that such discovery was made in time to have avoided that result by any preventive measures then available.

The trial judge's theory of the evidence was that it would permit a reasonable inference that the enginemen discovered the presence of the intestate on the track in time to have avoided the collision and killing either by stopping the train or by warning signals to the sleeping boy, and the question was submitted to the jury as a disputed question of fact.

As pointed out by counsel for appellant, the only facts before the court from which the required inferences could be drawn were (1) that the track was straight for about half a mile approaching the point of the killing, (2) that the engine had an electric headlight which enabled the enginemen to see along the track a distance of about 600 feet, and (3) that they were in fact keeping a general lookout down the track on the section of the road in question.

On this evidence it may be conceded, as a reasonable inference, that the engineer or fireman saw these boys as objects stretched along the track within the rails, as the train approached them. But the evidence does not indicate at what distance the observer from an engine cab could distinguish the nature of objects so small as the bodies of these boys must have appeared, lying flat on the ground, with their feet towards the train— an obviously unfavorable point of view, and at a time and place which would repel suspicious scrutiny.

In So. Ry. Co. v. Drake, 166 Ala. 540, 548, 51 South. 996, the plaintiff's intestate was lying with his head over a rail, and his body on the outside. One of the plaintiff's witnesses testified that with an electric headlight he thought an engineer could see a man, and tell it was a man, in 200 feet of him. The engineer testified that he saw an object about 150 feet away, but could not tell, and did not realize that it was a man until within about 30 feet of him.

In holding that upon this evidence the trial judge should have given the general affirmative charge for the defendant, this court, speaking through Mr. Justice Denson, said:

"Therefore to say, upon the proof disclosed by the record, that the engineer saw and realized that the object was a human being before he reached the point 30 feet from it, and, consequently, that he had actual knowledge of intestate's peril before that point was reached, would, it seems to the court, be the indulgence of pure conjecture or speculation."

In that case the train was a passenger train running at a speed of 15 or 20 miles an hour, and the evidence showed that it could have been stopped within 100 to 150 feet.

In the instant case it does not appear what kind of train it was, nor within what distance it could have been stopped from its speed of 40 miles an hour, equal to 58.5 feet per second. If the enginemen had discovered that these objects on the track were human beings even at a distance of 200 feet, prevention of the killing would have been manifestly impossible, for the train would have reached and struck them in 3½ seconds —too short a period of time to have slackened the speed materially, or to have seasonably aroused the sleeping boy by signals with bell or whistle.

Our conclusion is that the evidence does not support a finding for plaintiff under either the second or third count of the complaint, and that the trial judge erroneously refused to give for defendant the general affirmative charge as duly requested in writing.

For this error the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.