(103 So. 856)

### NEWMAN v. LOUISVILLE & N. R. CO.
### (6 Div. 153.)

(Supreme Court of Alabama.   April 9, 1925.)

**1. Railroads ⇐⇒359(1)—One lying on track held trespasser, to whom engineer owed no duty until discovery of peril.**

One lying on railroad track, where there was nothing to warn engineer that he might expect person on track at such time, was trespasser, to whom engineer owed no duty until actual discovery of his perilous situation.

**2. Railroads ⇐⇒400(14) — Evidence held to show as matter of law engineer could not have sounded alarm in time to arouse person asleep on track.**

In action for death of one run over while sleeping on railroad track, evidence *held* to show, as matter of law, that engineer could not have sounded alarm after discovering decedent's peril in time to arouse him and enable him to escape.

**3. Evidence ⇐⇒553(2)—Question as to distance headlight would enable engineer to discern object on track was human being held properly excluded, as not hypothesizing facts in evidence.**

In action for death of one run over while lying on railroad track, question to witness as to distance locomotive headlight enables engineer to discern whether object on track is body of man, *held* properly disallowed, as not hypothesizing facts in evidence affecting visibility of decedent's body.

**4. Appeal and error ⇐⇒854(2)—Reasons for correct ruling unimportant.**

Reasons assigned for correct ruling, sustaining objection to question, are unimportant.

---

Appeal from Circuit Court, Tuscaloosa County; Fleetwood Rice, Judge.

Action by Lillian Newman, as administratrix of the estate of G. T. Newman, deceased, against the Louisville & Nashville Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

The question made the basis of the second assignment of error is as follows:

"Now, Mr. Dent, for what distance ahead of a locomotive does such a headlight as that referred to light up the track between the rails ahead of the locomotive sufficiently to enable one looking out of the cab of the locomotive to discern when the object on the track is the body of a man?"

Jones, Jones & Van de Graaff, of Tuscaloosa, for appellant.

A party is not bound by every fact testified to by a witness called by him. Cent. of Ga. v. Ellison, 199 Ala. 571, 75 So. 159. On discovery of the peril of a trespasser, the engineer must use all the means at hand to avoid injury and give signals of warning. A. G. S. v. McWhorter, 156 Ala. 269, 47 So. 84; A. G. S. v. Sanders, 203 Ala. 57, 82 So. 17; Snider v. A. G. S., 210 Ala. 119, 97 So. 209; Thompson & Donohoo v. M. & O., 211 Ala. 646, 101 So. 441. If the enginemen were looking down the track, it was open to the jury to infer they saw plaintiff's intestate. C. of G. v. Ellison, supra; Shelton's Case, 136 Ala. 191, 34 So. 194; Ensley Ry. v. Chewning, 93 Ala. 24, 9 So. 458; L. & N. v. Trammell, 93 Ala. 350, 9 So. 870; C. of G. v. Partridge, 136 Ala. 587, 34 So. 927; B. R. & E. v. Smith, 121 Ala. 355, 25 So. 768; Sou. Ry. v. Bush, 122 Ala. 486, 26 So. 168. The question propounded to witness Dent should have been allowed. Sou. Ry. v. Drake, 166 Ala. 540, 51 So. 996; Nor. Ala. v. Henson, 210 Ala. 356, 98 So. 18.

Foster, Rice & Foster, of Tuscaloosa, for appellee.

The general affirmative charge was properly given for appellee. Sou. Ry. v. Drake, 166 Ala. 542, 51 So. 996; N. A. Ry. v. Henson, 210 Ala. 356, 98 So. 18.

SAYRE, J. Plaintiff's intestate was killed by a train on defendant's railroad. The time was about 9 o'clock at night. Intestate was prone upon defendant's track. When last seen, about two hours before, he was "reasonably sober." Near his body was found a jug of liquor "practically full." Defendant's train, constituted of a locomotive, caboose, and 15 cars laden with something more than 1,000 tons of freight, and perfectly equipped in all respects, moved at the rate of about 25 miles an hour along a straight track, slightly downgrade, from a curve 460 feet away, to the point where intestate lay. The further history of the case may be stated in the language employed by defendant when answering interrogatories propounded by plaintiff under the statute, said answer being put in evidence by plaintiff, as follows:

"Defendant's engineer, when the locomotive came out of the curve mentioned above, saw lying immediately between the rails, about four hundred (400) feet away, a white object laying flat on the ground, which had every appearance of being a piece of paper. At this point, immediately before the happening of this accident, it was not uncommon for pieces of white paper to be upon the track, and the white object which the engineer saw was flattened out on the ties between the rails and had the exact appearance of a piece of white paper. The engineer kept his eyes upon it, and when the front of the engine was about to pass over the object—almost upon it—the engineer discovered that it was a human being lying prone between the rails. At the time the engineer discerned the object to be a human being, the engine was only a few feet from said object, and it was impossible, by the use of all the means at his hands, to stop the train before running over said object. Immediately upon discerning the object to be a human being, the engineer did everything in his power to stop the train, but it was then too late to avoid running over said object. The object, which turned out to be a human being, was stretched out flat upon the ties between the rails, and never did move or show any signs of life.

"The fireman was busy with his duties, and did not perceive the object at any time. The engineer could not see and did not see at any time the little dog which must have been laying crouched close to the object which was later found to be a man. The locomotive at the time the train came out of the cut was running about 25 miles an hour, and it was in first-class condition in every respect.

"At the time the object was first discovered the engine was working steam, and when it was discerned to be a human being, the engineer cut off the steam and applied the air brake in emergency, and by the time that was done, and before anything else could be done, the engine had run over the object. There was no time to blow the whistle."

"Deceased did not have on a coat, but had on a light colored shirt and trousers, and as he lay flat midway between the rails, the light-colored clothing had the exact appearance that a piece of white paper would have had so situated under the bright glare of the headlight, which was shining brightly on said engine."

"Laying flat on the ties between the rails, without ever moving, there was never any sign of life in the object which turned out to be a human being, in fact, the engineer only discerned the object to be a human being as the front of the engine was practically upon it, and could not even then be positive that it was a human being, due to it being flattened out on the ground with white clothes upon it in the glare of the engine's headlight, and when the train was stopped and the object examined it was found to be a human being already dead, with no pulse and no respiration at all. The body was not warm, but felt really too cold for a man to have just been killed. From the indications of the body having been dead for

some time, it is clear that the train did not cause the death of the deceased. This place is in a cut, and nobody had any business in said cut on said railroad track at said time of night, and the engineer and fireman, who had been going over this road for quite a while, had never at any time observed any human being on said track in said cut at or near said place at said time of night. There was nothing to indicate that the object was a human being, and nothing to cause said engineer or said fireman, or any other of the train employees, to anticipate or expect the presence of a human being at said place at said time in said position."

[1, 2] Plaintiff's intestate was a trespasser on defendant's track. There was nothing to warn the engineer that he might expect a person on the track at that time and place. In these circumstances the engineer owed intestate no duty until an actual discovery of his perilous situation. Defendant's liability, then, depends upon the answer to this inquiry: Did the evidence afford a reasonable inference that the engineer, after discovering that a human being—intestate—was in peril, had time to stop the train or by sounding the alarm to arouse intestate to a timely understanding of the situation and so to avert the impending catastrophe? This inquiry the trial court answered by giving the general affirmative charge at defendant's request. With the judgment thus expressed, this court is in accord. Northern Alabama Ry. v. Henson, 210 Ala. 356, 98 So. 18, and Southern Ry. v. Drake, 166 Ala. 540, 51 So. 996, are very closely in point and suffice to determine this appeal in favor of appellee.

Appellant concedes that the engineer could not have stopped the train, thus expecting, as we read the brief, to provide standing room for the argument that the engineer, instead of wasting his time in futile efforts to stop, should have sounded an alarm which perchance, might have aroused intestate to an understanding of his peril and a successful effort to escape. As the brief proceeds, "It may well be that he (intestate) was just on the point of waking up and leaving the track when the train approached." "Certainly," it is said, "the contrary cannot be stated as a proposition of law." Referring to the evidence offered by plaintiff, the relevant gist of which has been stated, we feel entirely safe in the conclusion that the suggested solutions in favor of plaintiff are nothing more than speculations, lacking substantial bases in proof, and therefore should be allowed no weight as against the affirmative countervailing evidence.

The testimony of the witness Dent, who had had long experience as a locomotive engineer, was that:

"If a skillful engineer decides that he wants to blow the whistle of a locomotive, it takes him just a second; he can just reach and get it. He can do it instantly. It takes a little bit longer to cut off steam and put on the emergency brake after he decides to do it. You have got your brake handle right there, got your throttle a little above you, and you can do them both at the same time. It doesn't take over one second to shut off the steam and put on the brakes; it can be done almost instantly."

This witness on cross-examination also testified, in answer to an hypothetical question fairly stating the facts, that, in the circumstances stated, a skillful engineer "would shut off steam and apply the emergency; that is the first thing he would do; then he could blow his whistle." This was plaintiff's witness, but plaintiff was not bound by the judgment of the witness, and there is no doubt that in some cases it would be a question for the jury whether due care was exercised in the order of the engineer's efforts—whether the safety of the person on the track would be best conserved by resorting first to brakes or whistle, and whether a mistake in such circumstances should be held for negligence; at least some such conclusion was reached in Alabama Great Southern v. McWhorter, 156 Ala. 269, 47 So. 84; Alabama Great Southern v. Sanders, 203 Ala. 57, 82 So. 17, and Snider v. Alabama Great Southern, 210 Ala. 119, 97 So. 209, cases cited by plaintiff, appellant. But in the case presented by this record there hardly seems to be room for a difference of opinion. As the testimony quoted above shows, when the engineer discovered the object on the track to be a human being, the engine was only a few feet away; "the front of the engine was practically upon it." The engineer thereupon did everything in his power to stop the train, but without avail of course, and the judgment of the court is that, to hold that a blast from the whistle might have aroused plaintiff's intestate in time to make his escape, would involve a speculation upon facts which in reason admit of but one conclusion, and that a conclusion against plaintiff's case.

To these conclusions we hold plaintiff, not because she was bound by every statement of fact or opinion in the deposition offered in evidence by her, but because the controlling facts are not in dispute, and they admit of only one reasonable inference, viz., in the circumstances shown to sound the alarm, after discovery of the fact that a human being was in peril, would have been as futile as were the efforts to stop the train.

The facts of the cases relied upon by appellant afford satisfactory grounds of discrimination between those cases and the case now under consideration. In Alabama Great Southern v. McWhorter, supra, "there was proof that the intestate was sitting on the end of a cross-tie near the rail; that he could be seen from the crossing some distance, from one-third to one-half a mile, and that the engineer kept his eye on the track from the crossing until the intestate was struck," and the jury were free to adopt this version of the facts, and so to say that the engineer

should have sounded his whistle. In the Sanders Case, intestate was walking along the track, with his back towards the engine, giving no indication that he was aware of his peril, and was observed for something like 500 feet before he was struck. In the Snider Case a heavy train was moving upgrade at the rate of 10 or 12 miles an hour. Intestate was walking towards the track, and the court held that "it was open to the jury to find that a quick, loud blast of the whistle may have informed her of the danger in time to arrest her progress." The cases which we have cited, viz., Northern Alabama Ry. v. Henson, and Southern Ry. v. Drake, are much more closely in point, and, as we have said, suffice to determine this appeal in favor of appellee.

[3, 4] The question propounded by plaintiff to the witness Dent, and made the subject of the second assignment of error, was properly disallowed. As shown in the cases cited above in support of the judgment, the question at issue was, not what the engineer might have seen—because in the circumstances he owed deceased no duty until his peril was actually discovered—but what he did see. We have stated the engineer's testimony on this point. The question was too general to set up a contradiction of his testimony. If the witness' expert opinion was sought, the question should have hypothesized the facts affecting the visibility of intestate's body upon the track as such facts appeared in evidence. This the question failed to do, and for this reason, if none other, defendant's objection was well sustained, and further, the ruling being correct, the reasons assigned are of no moment.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.