25 So.2d 419

**BIRMINGHAM SOUTHERN R. CO. v. KENDRICK.**

6 Div. 398.

Supreme Court of Alabama.

March 28, 1946.

Benners, Burr, Stokely, & McKamy, of Birmingham, and Ross, Ross & Ross, of Bessemer, for appellant.

Lipscomb & Lipscomb, of Bessemer, and D. G. Ewing, of Birmingham, for appellee.

STAKELY, Justice.

This is a suit under the Homicide Act. § 123, Tit. 7, Code 1940. The case was submitted to the jury on two counts both charging subsequent negligence. Trial of the case resulted in a verdict and judgment for the plaintiff. Error is predicated on refusal of a number of written charges, including the affirmative charge, requested by appellant, and the action of the court in overruling motion for a new trial.

On December 5, 1943, at about 5:30 P. M. Central War Time in broad daylight, the body of Carl L. Kendrick was discovered by a train crew of appellant, lying between the rails of appellant's railroad track about one quarter of a mile north of the Old Tuscaloosa Highway in Jefferson County. When the body was first seen it was about one hundred feet in front of appellant's approaching train. The train was being pulled by a Deisel locomotive, American Type. The train consisted of the engine and twenty-four cars. Four of the cars were loaded and twenty were empty. The average weight of each empty car was approximately 60,225 pounds. The average weight of each loaded car was 118,650 pounds. The weight of the locomotive was 230,000 pounds. When the body was first seen by the train crew the train was travelling 25 to 30 miles per hour and the train crew applied brakes in emergency immediately.

The train ran approximately 300 feet after passing the spot where the body lay, or 400 feet after the body was first seen before it came to a stop. Travelling at 25 miles per hour the train could have been stopped at 339 feet and 10 inches and travelling at 30 miles per hour the train could have been stopped at 424 feet.

About a quarter of a mile north of where the body was lying is a public crossing known as 15th Street Crossing and, as stated, about a quarter of a mile south of where the body was lying is a public crossing known as the Old Tuscaloosa Highway Crossing. The railroad between these crossings is through open country, with a creek on one side, and woods and bushes on both sides of the railroad. The train was proceeding in a southerly direc-

tion. The whistle was blown at the 15th Street Crossing and the bell on the locomotive was ringing continuously from the 15th Street Crossing until the train passed the spot where the deceased's body was first observed. The whistle was not blown after discovery of the body.

While there are two curves between the 15th Street crossing and the Old Tuscaloosa Highway crossing, the track was practically level and straight in a northerly direction for about 400 to 440 yards from where the body lay. The body was lying with the feet toward the approaching train. The evidence was without dispute.

The decedent was clearly a trespasser on the track of the defendant. Since there was nothing to warn the engineer that a person might be on the track at the time and place where the body was lying, the defendant owed no duty until the actual discovery of the dangerous situation of the decedent. Callaway v. Griffin, 245 Ala. 598, 18 So.2d 547; Southern R. Co. v. Drake, 166 Ala. 540, 51 So. 996; Northern Alabama R. Co. v. Henson, 210 Ala. 356, 98 So. 18. The negligence of the defendant, if any, then occurring must have been in the failure to give a warning signal by the whistle, because the evidence shows without dispute that the bell was rung continuously from the 15th Street Crossing until the train passed the point where the body was lying, and also shows without dispute that the emergency brakes were immediately applied. There are situations where a sudden blast of the whistle might reasonably be expected to arouse the person on the track to his position of peril and enable him to escape. If reasonable inferences drawn from the evidence bring this case within that category, then the court was correct in submitting the case to the jury. Otherwise, the case was not a case for the jury. Beavers v. Southern R. Company, 212 Ala. 600, 103 So. 887.

An analysis of the Alabama decisions will aid in reaching a conclusion. In Snider v. Alabama Great Southern R. Co., 210 Ala. 119, 97 So. 209, intestate was walking toward the track and the train was moving slowly. The jury could infer that a sudden blast of the whistle would have warned and saved the deceased.

In the case of Alabama Great Southern R. Co. v. Sanders, 203 Ala. 57, 82 So. 17, the intestate was walking on the track in the same direction in which the train was running. No bell was rung or whistle blown. Such warning might have averted the tragedy.

In the case of Alabama Great Southern v. McWhorter, 156 Ala. 269, 47 So. 84, as pointed out by Mr. Justice Sayre in Newman v. Louisville & N. R. R. Co., 212 Ala. 580, 103 So. 856, the jury could have found under one aspect of the evidence that the intestate was sitting on the end of the cross-tie near the rail, and could be seen by the engineer from a distance of one-third to one-half a mile. Obviously in such a situation a warning from the whistle might have prevented the death of the plaintiff's intestate. Under another aspect of the evidence in that case, the engineer first saw the decedent 50 yards away, lying on the track. According to the opinion in the case, "The train was going 18 or 20 miles per hour." There was proof tending to show that the whistle was not blown. This court held that the defendant was not entitled to the affirmative charge.

In the case of Newman v. Louisville & N. R. Co., 212 Ala. 580, 103 So. 856, 858, the engineer discovered the object on the track to be a human being, when the engine was only a few feet away. The court held that the "judgment of the court is that, to hold that a blast from the whistle might have aroused plaintiff's intestate in time to make his escape, would involve a speculation upon facts which in reason admit of but one conclusion, and that a conclusion against plaintiff's case."

In the case of Northern Alabama R. Co. v. Henson, 210 Ala. 356, 98 So. 18, 19, plaintiff's intestate was a boy sleeping on the railroad track. The court held that considering the speed of the train—40 miles per hour—and the distance within which the train could be stopped, "even at a distance of 200 feet, prevention of the killing would have been manifestly impossible, for the train would have reached and struck them in 3½ seconds—too short a period of time to have slackened the speed materially, or to have reasonably aroused the sleeping boy by signals by bell or whistle."

In Southern R. Co. v. Drake, 166 Ala. 540, 51 So. 996, plaintiff's intestate was lying with his head over a rail and his body on the outside. The engineer realized the object was a man when 30 feet away. This court held the defendant entitled to the affirmative charge.

In Robertson v. Southern R. Co., 224 Ala. 640, 141 So. 559, 560, the engineer

first saw the deceased when the train was 50 or 60 feet away and the train was running at about 30 miles an hour. This court said:

"Taking every·inference against defendant, for this argument, we must assume that the train had 60 feet to go at the rate of 30 miles per hour before striking deceased. So that what the engineer and fireman could do must be done in about one and a half seconds. The train could not be stopped in that distance. Knowing that, could the engineer or fireman by a signal have caused deceased to get out of danger or lessen his injuries? There was no evidence as to how long it would take to give a signal. Was he in possession of his faculties, and could it have been given so that he would have heard it, realized his danger, and moved off of the track, all within a second and a half? * * *."

"We think that it would involve mere speculation to say that the whistle could have been blown in time to enable appellant's intestate to make his escape under the circumstances of this case, all within one and a half seconds. His effort to stop resulted in slowing down the train, but we agree with the circuit court that the jury could not infer negligence from the failure to give a signal after discovering his peril. It results that the claim of subsequent negligence or wantonness, after discovery of the peril of deceased, was not shown."

█ In the case at bar, plaintiff's intestate was lying between the rails of the track when first discovered. We do not know his condition, that is, whether he was asleep or intoxicated, or in some other condition. The whistle had been blown at the 15th Street Crossing. The bell had been rung continuously. Then, too, there was the natural noise made by a moving freight train. · These things apparently had not aroused him. It would take about 2.73 seconds for the train moving at 25 miles an hour to cover the distance of 100 feet from the point of discovery to the point where the body was lying. The effort to stop might slow down the train before it reached the body, but some time, even though only an instant, would be consumed in starting the whistle to sound. We conclude that it would be mere speculation to say that, when the body was discovered, the whistle could have been blown in time to enable the decedent to arouse himself and from his prone position within the ·rails to have moved to a point of safety.

It results that the court was in error in refusing the affirmative charge. In view of the conclusion reached, it is not necessary to consider other assignments of error.

Reversed and remanded.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.