28 So.2d 560

**CALLAWAY v. EASON.**

**6 Div. 429.**

Supreme Court of Alabama.

Nov. 7, 1946.

Rehearing Denied Jan. 16, 1947.

Sadler & Sadler, of Birmingham, for appellant.

Clifford Emond, of Birmingham, for appellee.

SIMPSON, Justice.

Richmond Joseph Eason walked in front of an on-coming train of the defendant and was killed. The suit is under the Homicide Act, Code 1940, Tit. 7, § 123, and counted for recovery on subsequent negligence and wantonness. From a judgment for the plaintiff defendant brings this appeal. We entertain the opinion the result of the trial cannot be sustained under either theory.

■ The claim of negligence rested on alleged misconduct of the engineer in the operation of the train after discovery of peril, so the question was whether after discovering intestate's plight, the engineer employed all available means to avert the accident. If so, then there could be no recovery on this theory. Louisville & Nashville Railroad Co. v. Markee, Adm'x, 103 Ala. 160, 172, 15 So. 511, 49 Am.St.Rep. 21; Central of Georgia R. Co. v. Bates, 225 Ala. 519(2), 144 So. 9.

The main track where Mr. Eason met his death was paralleled by a side or passing track and, though in a gradual curve at that place, the tracks generally ran east and west. The accident occurred about 11 o'clock in the day, approximately 3,000 feet west of the little station of Kellyton. The train, an engine and sixty-two freight cars, some loaded and some empty, had passed Kellyton and was proceeding west toward Birmingham at a speed of approximately 40 miles an hour.

The defendant offered no evidence and the substance and effect of the testimony of the only eyewitness to the accident, the engineer, Mullins, was: After his train rounded the curve and approached the point where the tragedy occurred, he observed two men (estimating) about three to five hundred feet ahead, walking eastwardly, single file on the passing track, in the direction of and facing the train; when the train was within about 200 feet of the men they suddenly changed their course and turned from the side track on which they were walking, toward the main line, whereupon he immediately sounded the whistle, applied the brakes and sanded the rails, which method of braking was the most efficient way to stop the train. The two men, however, did not stop but continued their course across the main track. The companion of the deceased succeeded in getting across, but Eason was struck by the end sill of the engine as he was in the act of clearing the outside rail and was instantly killed. The train stopped in about the minimum distance within which it could have been stopped after applying the brakes and sand. The train had already blown for Kellyton crossing and had given a station blow a mile before reaching Kellyton and the bell was ringing automatically when the train passed the station and continued to ring until after the accident. The witness was keeping a lookout ahead when the train rounded the curve, though one does not do so continuously, since, in operating the engine, certain gauges and instruments in the interior of the cab command some attention.

This was the uncontroverted, positive testimony on which recovery for subsequent negligence was based.

It is insisted for the plaintiff that adverse inferences, presenting a conflict, arise from the testimony of another of plaintiff's witnesses (Kitchens), where he stated he did not recollect hearing or did not hear the whistle blow and "couldn't say about the bell ringing" after the train passed Kellyton. The argument is that the jury could infer from this testimony that the bell was not ringing and the warning whistle was not blown as the engineer insisted they were when he saw the two men turn toward the main track.

Whether the negative evidence of a witness, that he did not recollect hearing or did not hear the bell ring or whistle blow, is evidence that it did not occur so as to raise a conflict when there was positive evidence that the bell did ring or whistle did blow, as the case may be, depends largely on the circumstances, and whether the witness was in a position to hear and his hearing not obstructed or he was paying attention to what occurred. In some cases it has been held not sufficient to create a conflict (Fayet v. St. Louis & S. F. R. Co., 203 Ala. 3(2), 81 So. 671, cited in Southern R. Co. v. Miller, 226 Ala. 366, 369, 147 So. 149, and in Louisiana & Arkansas Ry. Co. v. Jackson et al., 5 Cir., 95 F.2d 369; Chilcote v. Chicago & N. W. R. Co., 206 Iowa 1093, 221 N.W. 771); in others it has been held to require a verdict by the jury. Mobile & Ohio R. Co. v. Davis, 223 Ala. 600(16), 137 So. 525; Louisville & Nashville R. Co. v. York, Adm'x, etc., 128 Ala. 305(12), 30 So. 676; 32 C.J.S., Evidence, § 1037, pp. 1081, 1082; Alabama Great Southern R. v. Russey, 190 Ala. 239, 67 So. 445. The circumstances here shown are not sufficient to justify a theory that there was a conflict in the evidence in that respect.

Standing alone, or if it had been shown that Kitchens' hearing was good, that he was watching or giving attention to the fact when the accident occurred and did not, in fact, hear any signals sound, this testimony would have been enough, under the scintilla rule, to take the case to the jury. However, this was not the true import of his testimony. He further testified (seven years after the accident) that, at

his blacksmith shop at Kellyton where he was at the time, the train had already passed (we gather from other parts of the record the engine was some quarter-mile past and out of view) and he had no interest in it at that time, did not know there had been an accident until it had stopped and could not say, as a matter of fact, whether it did or did not give either of these warning signals and could not recall "one way or the other" about it. The effect of his testimony then is neither an affirmation nor a denial of the controverted fact. Under the rule of the foregoing authorities, in the face of the positive testimony of engineer Mullins and one other of the plaintiff's witnesses that the bell was ringing and the warning whistle was blown, the uncertain negative testimony of the witness Kitchens cannot, in the disclosed circumstances, be regarded as presenting a conflict.

 We have given the case our studious consideration after reading the testimony in consultation, and feel bound to reach the conclusion that the evidence wholly failed to make out a case of subsequent negligence. The deceased and his companion were in no danger while walking toward and facing the train on the passing track. There was nothing to indicate that they were not in the proper exercise of their senses or that they would not continue to perform the obvious duty of keeping their course and avoiding the approaching train, and no situation was presented to impress a reasonable person that they would expose themselves to danger until they changed their course and turned toward the main line. When this occurred, the engineer immediately exercised every means at his command to avert the accident and hence was guilty of no negligence after thus becoming aware of their perilous situation. Bason v. Alabama Great Southern R. Co., 179 Ala. 299, 303, 60 So. 922; Northern Alabama R. Co. v. Henson, 210 Ala. 356, 98 So. 18, 19.

We have said that a man walking toward a railroad crossing is in no peril from a passing train "unless and until he enters the wake of the train" and that the engineer may assume that he will exercise his senses and look and listen and not try to cross if the train is dangerously near (De-Bardeleben v. Western Ry. of Ala., 227 Ala. 553, 151 So. 56; see also Bason v. Alabama Great Southern R. Co., supra); that, under such circumstances, unless the traveler manifests in some way that he is not possessed of his senses or is unaware of his peril, or will probably not stop but will cross in front of the train, no immediate action is incumbent on the trainmen (Illinois Cent. R. Co. v. Martin, 213 Ala. 617 (4 and 5), 105 So. 805; Mobile Light & R. Co. v. Gadik, 211 Ala. 582, 100 So. 837), and they may assume the traveler would do his duty and stop and not attempt to cross. Southern Ry. Co. v. Miller, 226 Ala. 366, 147 So. 149; Sloss-Sheffield Steel & Iron Co. v. Peinhardt, 240 Ala. 207, 199 So. 33; Atlantic Coast Line R. Co. et al. v. Flowers, 241 Ala. 446, 3 So.2d 21.

 Boiled down, the essence of these pronouncements, and applicable here, is that where it reasonably appears the traveler is or should be aware of the approaching train and is in a place of safety and there is nothing to indicate to those in control of the locomotive that he will expose himself to danger, the operators of the train have a right to assume he will remain out of danger and no immediate action is then incumbent on them, nor until the circumstances should indicate that the traveler will probably expose himself to peril.

Testing the evidence by the stated rule, it must be held that no case was made for subsequent negligence.

There is a wealth of authority on the question, but the following additional cases will also serve to illustrate the soundness of our holding: Louisville & N. R. Co. v. Farley, 201 Ala. 365, 78 So. 221; Illinois Cent. R. Co. v. Martin, supra; Southern Ry. Co. v. Miller, supra; Birmingham So. R. Co. v. Kendrick, 247 Ala. 573, 25 So.2d 419; Northern Alabama Ry. Co. v. Elliott, 219 Ala. 423, 122 So. 402, 403.

Though argued with much cogency, we cannot agree with learned counsel that contrary inferences are deducible from engineer Mullins' testimony to produce a conclusion that the deceased was seen to start toward the main track 1022 feet away from

the point of accident and under circumstances to be warned of his danger so as to escape the approaching train. Though the witness did say he was keeping a lookout ahead (while not attending the instruments inside the cab) when he rounded the curve, 1122 feet away, and that after he saw the men and had proceeded another 100 feet they turned toward the main line, we are persuaded that to say the inference arises that he saw them turn toward the main line 1022 feet away and then failed to warn them would not be at all consonant with a fair and impartial construction of the whole testimony. Clearly what the witness intended to and did say was that the two men started toward the main track when about 200 feet from the train, whereupon he immediately gave the whistle warning.

■ But even so, if taken as argued for the plaintiff and deceased was seen to walk onto the main track 1022 feet away, no duty then rested on the operators of the train to warn him, for he was then in no danger and had ample time to cross the track and save himself. As observed in Northern Alabama Ry. Co. v. Elliott, supra, a case bearing considerable similarity to the instant one, "the engineer had the right to assume that intestate was aware of the approach of the train and would take himself out of danger; there being nothing to show disability on the part of deceased, an able-bodied man, nor any difficulty in the surroundings to prevent his doing so."

Equally inescapable is the conclusion, we think, that the trial court erred in refusing the defendant's affirmative charge on the wanton count.

■ In order that the defendant be subjected to the damnifying consequences of the charge there must have been a duty to the plaintiff's intestate, or persons similarly situated, and a consequent breach of that duty, proximately resulting in the claimed damages. Hill v. Reaves, 224 Ala. 205, 139 So. 263.

■ Conceding that pedestrians did, at the time and place charged, make use of the main track as a passway so as, under the rule of our cases, to charge the trainmen with notice that some one may be in a place of danger (Whitehead v. St. Louis & S. F. R. Co., 179 Ala. 314, 60 So. 930; Southern Ry. v. Stewart, 179 Ala. 304, 310, 60 So. 927; Louisville & Nashville R. R. Co. v. Heidtmueller, 206 Ala. 29, 89 So. 191), we have held that this character of imputed knowledge is of no consequence and imposes no duty where the traveler, if in danger, is actually observed under circumstances as that those in control of the train might proceed on the assumption that he will avail himself of the opportunity open to him of taking himself out of danger. Northern Alabama Ry. Co. v. Elliott, supra.

■ The principle is even more opposite to exclude a finding of wantonness which implies a willingness to do injury or an indifference to consequences in a situation of known danger, under the undisputed facts of the case in hand which disclose that the engineer saw the deceased in a place of safety on the side track and could reasonably assume, nothing being indicated to the contrary, that deceased would so remain and not expose himself to danger by the wholly unpredictable and extraordinary course of walking onto the main track in front of the train.

■ A corollary to this principle of law which also acquits the defendant of the charge of wantonness is that the plaintiff's right of recovery must be tested not by the duty owed to others or to the general public, but only by the duty, if any, owed to the intestate or those in his class who might make use of the tracks in the manner he was doing. Whatever duty may have devolved on the trainmen to warn those who might be using the main track, in the customary way, as a walkway from Culbertson to Kellyton crossings, this duty could not be invoked to protect deceased, a different character of trespasser who was using the side track. Southern Ry. v. Stewart, supra, and cases cited at page 311 of 179 Ala., 60 So. 927; Southern Railway v. Shirley, 189 Ala. 568, 574, 66 So. 511; Louisville & Nashville R. Co. v. Porter, 196 Ala. 17, 71 So. 334; Southern Railway v. Drake, 166 Ala. 540, 51 So. 996.

■ It is clear the facts disclose no duty on the trainmen to anticipate that deceased, who it could be assumed was aware of the

train's approach, would proceed from a safe place onto the main track in front of the train and, therefore, no duty to warn him until he indicated a different course by starting toward the main line. Notice of what he was about to do was not to be brought home to the defendant's agent in charge of the locomotive by knowledge of the wholly different thing customarily done by others who might be walking on the main track. Louisville & Nashville R. Co. v. Porter, supra, at p. 19, of 196 Ala., 71 So. 334.

We can discern no valid theory, under the evidence adduced, authorizing the jury to infer that the engineer either wantonly or without heed after discovery of peril ran upon deceased, and entertain the opinion that the trial court committed error in submitting either issue to the jury.

Reversed and remanded.

All the Justices concur.