74 So.2d 266

**ATLANTIC COAST LINE R. CO.**

v.

**FRENCH.**

**6 Div. 540.**

Supreme Court of Alabama.

March 4, 1954.

Rehearing Denied Aug. 30, 1954.

Huey, Welch & Stone, Bessemer, for appellant.

Edw. L. Ball, Norman K. Brown, Bessemer, for appellee.

**LAWSON, Justice.**

This is a suit by a mother brought under the so-called homicide act, § 119, Title 7, Code 1940, to recover damages for the death of her eleven-year-old son.

The case was submitted to the jury on behalf of the plaintiff on Count A of the complaint, which count charged subsequent negligence, and on the defendant's plea of the general issue in short by consent.

There was jury verdict in favor of plaintiff in the amount of $6,000. Judgment followed the verdict. The defendant's motion for new trial having been overruled, it has appealed to this court.

■ The language of the complaint sufficiently shows the causal connection between the negligence of the defendant and the death of plaintiff's minor son. Carter v. Shugarman, 197 Ala. 577, 73 So. 119; Jack Cole, Inc., v. Walker, 240 Ala. 683, 200 So. 768. See Southern Ry. Co. v. Wright, 207 Ala. 411, 92 So. 654.

■ The rule in respect to a motion by a defendant to exclude all the plaintiff's evidence is that the trial court will not be put in error for refusing the motion nor will it be put in error for granting it if the evidence does not make out a prima facie case. Riley v. Riley, 257 Ala. 636, 60 So.2d 432, and cases cited.

It is insisted that the general affirmative charge with hypothesis, requested by the defendant in writing, should have been given.

■ It is well established that a child may become a trespasser upon the same facts that would fix that status upon a person of legal discretion and this is true although the child be incapable of contributory negligence. Alabama Great Southern R. Co. v. Moorer, 116 Ala. 642, 22 So. 900; Nashville, C. & St. L. Ry. Co. v. Harris, 142 Ala. 249, 37 So. 794; Cardwell v. Louisville & N. R. Co., 185 Ala. 628, 64 So. 564.

It is conceded that plaintiff's minor son was a trespasser on a trestle of the defendant at the time he received his fatal injury.

■ There was nothing to warn the engineer that a person might be on the trestle, hence the defendant owed no duty until the actual discovery of the dangerous situation of the deceased. Birmingham Southern R. Co. v. Kendrick, 247 Ala. 573, 25 So.2d 419.

It is without dispute that the engineer did discover the presence of the deceased on the trestle, as a human being, and at the time of the discovery became aware of the deceased's perilous situation.

Immediately upon discovery of the deceased's peril the defendant owed him the duty to exercise reasonable care to avoid injuring him. Callaway v. Griffin, 245 Ala. 598, 18 So.2d 547.

■ The rule as to duty and diligence after discovery of peril in a case of this kind is that the agent or servant in control of the engine must promptly resort to all

preventive means at hand known to skilled persons likewise employed to avert injury. Kendrick v. Birmingham Southern R. Co., 254 Ala. 313, 48 So.2d 320, and cases cited. In Louisville & N. R. Co. v. Griffin, 240 Ala. 213, 216, 198 So. 345, 347, the rule is stated in the following language:

"It is well established in this jurisdiction that in order to predicate liability for subsequent negligence, the defendant must be shown to have had actual knowledge of the plaintiff in a perilous position, and thereafter negligently fail to use all the means at his command and known to skillful engineers, so circumstanced, to avert damage to the plaintiff, when to have promptly and duly used such means could have averted the accident. * * *"

As regards the failure of the engineer to sufficiently retard the movement of the train, the negligence to liability consists in a failure to perform the duty declared, and not in the ultimate effect produced on the movement of the train. Louisville & N. R. Co. v. Young, 153 Ala. 232, 45 So. 238, 16 L.R.A.,N.S., 301.

In a case of this kind the provisions of § 173, Title 48, Code 1940, do not operate to place the burden on the defendant to prove want of negligence after discovery of peril. Watts v. Atlantic Coast Line R. Co., 256 Ala. 352, 54 So.2d 601; Atlantic Coast Line R. Co. v. Flowers, 241 Ala. 446, 3 So.2d 21. See Louisville & N. R. Co. v. Johns, 258 Ala. 440, 63 So.2d 574.

The plaintiff, having based her right to recover on allegations charging subsequent negligence, had the burden of proving those allegations. Louisville & N. R. Co. v. Griffin, 240 Ala. 213, 198 So. 345; Young v. Woodward Iron Co., 216 Ala. 330, 113 So. 223; Jolley v. Southern Ry. Co., 197 Ala. 60, 72 So. 382; Louisville & N. R. Co. v. Rayburn, 192 Ala. 494, 68 So. 356; Louisville & N. R. Co. v. Jones, 191 Ala. 484, 67 So. 691; Louisville & N. R. Co. v. Moran, 190 Ala. 108, 66 So. 799.

We come now to consider the evidence. The defendant offered no testimony. The plaintiff's testimony consisted of the answers of the defendant to interrogatories propounded by the plaintiff and the testimony of two witnesses, one of whom was an eye-witness to the tragedy. The other observed the movements of the train but did not see the train hit the deceased.

We will first summarize the pertinent parts of the defendant's answers to the interrogatories.

The trestle on which deceased was killed is approximately 376 feet long and the distance from the ground to the top of the crossties on the trestle is approximately 32 feet. The trestle is almost in the center of a six-degree curve to the right looking north. The total length of the curve is about 720 feet.

The accident occurred on the morning of April 19, 1951. Defendant's train was moving in a northerly direction downgrade. The freight train consisted of four Diesel locomotive units and seventy-four cars. The train had been moving at a speed of approximately thirty miles an hour, but before reaching the trestle the engineer had made a service application of the brakes so as to stop the train at a point some distance beyond the northern end of the trestle.

The front part of the train was on the trestle when the engineer first became aware of the presence of the deceased. The deceased was approximately 136 feet in front of the train when the engineer first saw him. He was running in a northerly direction away from the approaching train. Deceased was approximately four feet from safety, the northern end of the trestle, when he was hit by the train. He had run a distance of approximately 156 feet from the time the engineer saw him until he was hit. The train in the meantime had moved a distance of approximately 292 feet.

The train was moving at a speed of approximately twenty miles an hour when the engineer discovered the deceased on the trestle. The bell was ringing at the time of

discovery. The engineer immediately did everything at his command known to skillful engineers to avoid injury to the deceased, including the immediate application of the brakes in emergency, the sanding of the tracks, and the blowing of the whistle several times. "It was impossible for the engineer after the discovery of the deceased on the trestle to prevent the train from striking the deceased by the exercise of all means at his command known to skillful engineers, although he did exercise all such means immediately upon discovery of the deceased upon the trestle."

When the brakes were applied in emergency the speed of the train was gradually reduced so that at the time of impact the speed was from twelve to fifteen miles an hour.

After the deceased was hit by the train, he was pushed down the track for a distance of from 120 to 140 feet before his body fell to the side of the track clear of the train. When the engineer observed that the body of the deceased was clear of the train, he released the brakes in emergency to prevent damage to the wheels of the locomotive unit and brought the train to a stop by the service application of brakes, whereby the train travelled a longer distance than it would have travelled had the brakes remained in emergency. The train was stopped at a point approximately 560 feet from the place where the deceased was first seen on the track.

By introducing in evidence the answers to the interrogatories the plaintiff, as before indicated, met the burden which was upon her to show discovery of peril. But rather than show negligence on the part of the engineer after discovery of peril, the answers tend to show there was no such negligence.

George Cliett, a witness for plaintiff, testified that he saw the train as it entered the southern end of the trestle, at which time it was moving at a speed of from fifteen to twenty miles an hour; that at the same instant he saw the deceased and another colored boy as they were running for safety toward the northern end of the trestle, the same direction in which the train was going; that the speed of the train was never decreased from the time it entered the trestle until it had proceeded many feet beyond the point where deceased was hit; that he was not only watching the train and could observe no decrease in speed, but he heard none of the noises while the train was on the trestle of the kind which usually accompany the application of brakes to a moving train; that after the train got on the trestle and prior to the time it hit the deceased, he did not hear the whistle sound or the bell ring; that the deceased stumbled and fell a short distance before reaching the northern end of the trestle and was then hit by the train, but his companion escaped to safety.

Another witness called by plaintiff gave testimony to the effect that the speed of the train was not decreased nor did it appear that the brakes were applied until after the engineer of the train had passed across trestle and the train was not brought to a stop until after it had passed the trestle for some distance; that he did not hear the whistle blown or the bell rung while the train was on the trestle.

■ We are of the opinion that the two witnesses referred to above were in such a position to hear what occurred that the negative evidence to the effect that they did not hear the whistle blow or the bell ring is sufficient evidence to raise a conflict as to whether those acts did occur, even though there was positive evidence that they did occur. Louisville & N. R. Co. v. Phillips, 202 Ala. 502, 80 So. 790; cf. Callaway v. Eason, 248 Ala. 523, 28 So. 2d 560.

■ But the failure of the engineer to blow the whistle and ring the bell after the discovery of the deceased's peril does not, in our opinion, constitute actionable negligence. The undisputed evidence is to the effect that deceased was already aware of his peril and was attempting to extricate himself therefrom at the time he was discovered by the engineer. It seems obvious that under the facts of this case any failure in duty on the part of the engineer to sound

warning signals after discovery of peril can have no causal connection with the injury. Watts v. Atlantic Coast Line R. Co., 256 Ala. 352, 54 So.2d 601.

So the question remains as to whether plaintiff met the burden which was upon her to show that after discovering her son's peril, the engineer negligently failed to promptly resort to all means at hand known to skillful engineers to retard the forward movement of the train.

The effect of defendant's answers to interrogatories is that there was no such negligent failure on the part of the engineer; that he did everything within his power to stop or slow down the train so as to enable the deceased to escape; that immediately upon discovery of deceased's peril he exercised all of the means at his command known to skillful engineers to prevent the train from striking deceased, but it was impossible to accomplish that result.

No expert witness testified to the distance in which the train might have been stopped or as to whether by proper performance of duty with the means at hand the engineer could have sufficiently retarded the speed of the train as to permit the deceased to reach the northern end of the trestle and safety.

We are confronted, therefore, with the question as to whether the testimony of the two witnesses to the effect that they did not observe any decrease in the momentum of the train while it was on the trestle or during that time hear any of the noises which usually accompany the application of brakes to a moving train, with which noises they were shown to be familiar, is sufficient to make a question for jury decision on the claimed negligence of the engineer after discovery of peril.

A decision on that point is not free from difficulty, but we are of the opinion that under the scintilla rule the trial court did not err in permitting the case to go to the jury on that issue, in view of the testimony of plaintiff's witnesses alluded to above.

The fact is that deceased lacked only four feet of reaching safety. He had run approximately 156 feet from the time he was first seen by the engineer before he was hit, according to defendant's answers to the interrogatories. But the jury might have found him to have been somewhat closer to the northern end of the trestle when discovered by the engineer, for according to the witness Cliett, if we understand his testimony correctly, the deceased was nearer the northern end than that distance when the train entered the southern end of the trestle. The jury might also have found that deceased did not stumble and fall as testified by Cliett. Defendant's answers to interrogatories are not to that effect.

The testimony of the witnesses to the effect that the engineer did not check the speed of the train while on the trestle was competent. Pollard v. Nicholls, 5 Cir., 99 F.2d 955.

It is a matter almost of common knowledge that when brakes are applied to a moving train there is an escaping of air and other noises. In any event, these witnesses testified that such had been their observation and that they heard no such noises and they observed no decrease in the speed of the train. They were in positions to have heard and seen. Their credibility, of course, was for the jury.

We are of the opinion that the evidence to the effect that the forward movement of the train was not retarded at all after the discovery by the engineer of deceased's peril, when taken into consideration with the distance the train ran after hitting deceased, was sufficient to warrant the inference by a fair jury that the engineer did not use reasonable care to avoid the injury after discovering the peril. Louisville & N. R. Co. v. Loyd, 186 Ala. 119, 65 So. 153; Pollard v. Nicholls, 5 Cir., 99 F.2d 955. The deceased was only a few feet from safety when he was hit. The difference of a few seconds might well have been the difference between life and death.

We hold, therefore, that the trial court did not err in refusing the general affirmative charge requested by the defendant.

Reversible error is not made to appear in connection with the trial court's refusal to give defendant's requested written charges 8, 9 and 10. The principle of law stated in those charges was fairly and substantially covered by the court's general charge and by written charge A given at the request of the defendant. § 273, Title 7, Code 1940; Mobile City Lines v. Alexander, 249 Ala. 107, 30 So.2d 4.

The general statement in the court's oral charge to the jury that "on the other hand, if she should prove to your reasonable satisfaction every material statement in Count A, then she would be entitled to recover damages in this case," is not unsound. Sovereign Camp, W.O.W., v. Gunn, 229 Ala. 508, 158 So. 192.

The two remaining assignments of error which are argued in brief also relate to exceptions taken to the court's oral charge. In each of them the defendant complains of statements made by the trial court which, when considered in connection with the remainder of the charge, do not in our opinion show reversible error.

The judgment appealed from is affirmed.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.